CITY OF CLEVELAND, APPELLANT, *v.* ASSOCIATION OF CLEVELAND FIRE FIGHTERS, LOCAL 93, APPELLEE.

(No. 47811—Decided October 9, 1984.)

*James E. Young,* law director, *John D. Maddox, Donald F. Black, Thompson, Hine & Flory, Robert L. Larson* and *Keigh A. Ashmus,* for appellant.

*Summers, Potts, Kampinski & Brucato, William L. Summers* and *Joseph J. Jerse,* for appellee.

MARKUS, P.J. Following their attempts to negotiate prospective employment terms, the city of Cleveland and its fire fighters' union submitted their "impasse issues" to binding arbitration. Applying "factors" designated in the parties' underlying agreement, the arbitrators selected between the parties' final negotiation positions for those issues. However, the arbitrators declined to determine the validity or significance of an alleged later "Compact" which purportedly restricted wage increases. They reasoned that the proffered compact was not a "relevant factor" designated for their consideration by the governing terms in the arbitration agreement.

The trial court granted the union's motion to confirm the arbitration award and denied the city's motion to vacate it. The court also dismissed the city's action to declare that the parties' later wage-restricting compact superseded the arbitration agreement and the resulting award. We affirm the trial court's order confirming the arbitration award. We remand the declaratory relief action to determine whether the claimed later compact affected the rights established by the arbitration decision.

I

The city and the fire fighters' union executed a "Memorandum of Understanding" for the two-year period following January 1, 1979, with automatic yearly renewals thereafter. To discourage work stoppages, that agreement provided for binding arbitration of any impasse issues when the parties negotiated their next labor contract:

"ARTICLE XX
"BINDING ARBITRATION
"*Binding Arbitration of Impasse Issues:*

"Ninety (90) days before the expiration of this Memorandum of Understanding; the City and the Union shall begin negotiation and shall negotiate for a period of at least sixty (60) days. After sixty (60) days either party can demand final and binding arbitration by written notice to the other, of all issues on which they are at impasse in accordance with the following procedures:

"A) Each party shall appoint an arbitrator and those two arbitrators shall agree on a third impartial arbitrator within five (5) days, or they shall select a third impartial arbitrator by the strike-off method from a list of seven (7) furnished by the American Arbitration Association.

"B) Five (5) days after the third impartial arbitrator has been selected the parties shall submit their final offer on each issue which is at impasse to the arbitration panel.

"C) The arbitration panel may hold hearings, receive evidence or documentation, and call witnesses in accordance with the arbitration rules of the American Arbitration Association.

"D) After receiving whatever evidence the parties wish to submit, the arbitration panel shall select the final offer

of one of the parties on each of the impasse issues and shall issue an award incorporating all of these selected final offers, without modification.

"E) In reaching its decision, the arbitration panel shall give weight to the following factors:

"1) The lawful authority of the City.

"2) The interest and welfare of the citizens of the City; and the financial ability of the City to meet the costs of any proposal considering the other costs and obligations of the City.

"3) A comparison of the wages, hours, benefits and conditions of employment of the employees of the Cleveland Fire Department with the wages, hours, benefits and conditions of employment of other comparable fire departments in the State of Ohio performing similar services and with other employees generally.

"4) The overall compensation and benefits received by the employees in the Fire Department, including direct wages, vacations, holidays, sicktime, leavetime, insurance, pension and hospitalization benefits and the continuity and stability of their employment compared with other employees in both the public and private sectors.

"5) The operating problems of the City and the protection of the rights of the Fire Department employees to fair treatment in working conditions.

"F) Each party shall bear the expense of its own arbitrator and the parties shall split the expense of the third impartial arbitrator, and all other expenses of the arbitration proceeding, other than the expenses of their own witnesses and/or counsel.

"G) Any violation of Article XX, or any action by the Union to threaten a strike or to conduct a strike vote, shall cancel all provisions for impasse arbitration."

On September 3, 1980, union leaders for the fire fighters and other city employees signed a "Compact" with the city:

"The Labor Leaders and Labor Organizations representing employees of the City of Cleveland have met with the Mayor about the financial problems of the City. The Labor Leaders agree with the Mayor that the passage of an additional .5% income tax is essential in continuing the financial rehabilitation and revival of the City.

"Without the tax increase, the Financial Plan in effect for the City of Cleveland provides for further layoffs of City employees and minimal wage increases. The Labor Leaders believe that further reductions in City services and the financial inability of the City to make necessary equipment replacements and improvements will be detrimental to all of the citizens of the City as well as its employees.

"The Mayor has agreed to propose and campaign for a .5% increase in the City income tax. In support of this effort, the undersigned City Labor Leaders and Labor Organizations agree that they will settle for no more than an 8% total increase in wages and fringe benefits for the calendar year 1981 and that they will settle for no more than an 8% total increase in wages and fringe benefits for the calendar year 1982.

"The parties understand that there will be conventional negotiations between their various organizations and the City with respect to working conditions and related matters at the appropriate time before the end of the year 1980. The Mayor and the Labor Leaders agree that the purpose of this Compact is to tell the voters of the City of Cleveland that the Labor Organizations and the employees of the City are four-square behind the Mayor's effort to improve and stabilize the City as a place to live and work. The employees of the City and their Labor Organizations will limit their financial demands in the years 1981 and 1982 so that this effort can

proceed; and so that the .5% income tax can be passed by the voters with knowledge as to how the monies will be spent on behalf of the City of Cleveland."

The voters defeated the proposed tax increase in the November 1980 election, but passed it in a special election in February 1981. In May 1981, negotiators for the city and the fire fighters settled on a proposed contract for 1981-1982, which included an eight percent wage increase. However, the union members voted to reject that contract. The union negotiating team then raised their wage increase demand to 9.6 percent.

When the parties could not reach an agreement on the wage issue and two other contract terms, they invoked the arbitration provisions in Article XX. Three arbitrators conducted hearings on October 20-21 and November 2, 1981. The arbitration panel heard extensive testimony and received substantial documentary evidence.

The "Compact" was offered and received as a joint exhibit. A union leader testified that he advised the mayor and other union leaders when he signed the compact that he was signing as an individual. He reportedly said that the union members could not be bound by its provisions unless they ratified it. A city representative corroborated that testimony. The union leader said the members never ratified the compact, but the arbitrators excluded evidence that the union's leadership considered it binding on the union.

In its December 4, 1981 decision, the arbitration panel awarded the union a 9.6 percent wage increase. The arbitrators' decision and award explained:

"With respect to the above Decision and Award dealing with compensation, a majority of this arbitration panel does *not* believe that the September 3, 1980 *Compact* between the City and the labor organizations representing the City's employees is a 'factor' which may be given 'weight' under Article XX (E) of the January 1, 1979 Memorandum of Understanding. Although the specific 'factors' which this arbitration panel must consider and 'give weight' are set forth in Article XX (E), it is significant that side agreements, compacts and prior concessions between the parties are neither included in nor obliquely referred to among the 'factors' to be considered in an impasse arbitration proceeding. Under these circumstances, it would be highly presumptuous for this arbitration panel to justify any part of its Decision and Award on the basis of a compact which one party now disaffirms and which neither party chose to include in their Memorandum of Understanding as a 'factor' to be utilized in the arbitration process.

"It is a well established doctrine of labor arbitration that an arbitrator's award must draw its essence from the labor agreement and from no other source. For this reason, and because the Union rejects the applicability of the September 3, 1980 Compact, this arbitration panel may not reach beyond the Memorandum of Understanding under which it serves in order to utilize a criterion which is *not* included among the applicable criteria or 'factors' contained in the operative agreement.

"Although the City contends (1) that the Compact is 'a moral and legal obligation to the Mayor, the other labor leaders of the City and most importantly, the citizens of Cleveland' and (2) that 'the firefighters have a legal obligation to honor this Compact, such arguments are more appropriate in a court of law than in a final offer arbitration forum where the arbitration panel clearly has no authority to determine and enforce the legal obligations upon which the City relies.

"Within the context of a final offer arbitration proceeding, the clear and restrictive wording of Article XX (E) of

the January 1, 1979 Memorandum of Understanding must prevail and the September 3, 1980 Compact cannot be taken into account by this arbitration panel."

On December 10, 1981, the city filed a motion in common pleas court to vacate the arbitration award. The city claimed that the arbitrators excluded material and relevant evidence by refusing to consider the "Compact" (see R.C. 2711.10[C]), and thereby exceeded their powers. See R.C. 2711.10(D). The city later amended its motion to vacate by adding a complaint for declaratory judgment to determine the validity and enforceability of the "Compact." The union answered the declaratory relief complaint and moved the court to confirm the arbitration award.

At its hearing, the trial court received testimony by the mayor and joint exhibits consisting of the transcript and exhibits from the arbitration hearing. The trial court denied the city's motion to vacate and granted the union's motion to confirm the arbitration award. The court ruled that the arbitrators received all material evidence and that their function of weighing the evidence authorized their refusal to consider the "Compact."

The trial court also decided that the arbitration award determined the city's declaratory relief claim, so that action was barred by res judicata principles. Accordingly, the trial court dismissed the declaratory relief complaint.

## II

The city's three assigned errors all concern the arbitrators' refusal to consider the significance of the wage-limitation compact. The first two assignments of error assert that their refusal required the court to vacate the arbitration award rather than to confirm it. The final assignment contends that the arbitration award did not preclude declaratory relief about the compact's significance, since the arbitrators chose not to decide it.

When contracting parties agree to submit a prospective controversy to binding arbitration, they must accept the result, even if it is legally or factually wrong. See Goodyear v. Local Union No. 200 (1975), 42 Ohio St. 2d 516, 520, 522-523 [71 O.O.2d 509]; Warner v. CTL Engineering, Inc. (1983), 9 Ohio App. 3d 52, 54-55; Huffman v. Valletto (1984), 15 Ohio App. 3d 61. A court will grant relief from an adverse arbitration award only when the arbitrators were corrupt or committed gross procedural improprieties described in R.C. 2711.10. Lockhart v. American Reserve Ins. Co. (1981), 2 Ohio App. 3d 99, 102; Menardi v. Petrigalla (1983), 11 Ohio App. 3d 9, 11-12.

The city claims that these arbitrators "were guilty of misconduct * * * in refusing to hear evidence pertinent and material to the controversy" by ignoring the compact. See R.C. 2711.10(C). It also claims that they "exceeded their powers, or so imperfectly executed them [by disregarding the compact] that a mutual, final, and definite award upon the subject matter submitted was not made." See R.C. 2711.10 (D). However, these arbitrators did not exclude any evidence relevant to the issues which they considered. Instead, they construed the underlying contract to preclude their consideration of the issues surrounding the wage-restricting compact.

Arbitrators cannot decide issues which the parties have not submitted for their decision. The parties can expand the scope of their original arbitration contract by expressly or impliedly agreeing to submit additional disputes to the arbitrators. Cf. Cabus v. Dairyland Ins. Co. (Colo. App. 1982), 656 P. 2d 54, 55; Piggly Wiggly Operators' Warehouse v. Piggly Wiggly Independent Truck

*Drivers' Union* (C.A. 5, 1980), 611 F. 2d 580, 584.

In this case, the parties' written submission to the arbitration panel addressed issues of employee compensation, union recognition, and employee-acting time. The contract specified five factors which the arbitrators could consider in deciding those issues. Neither party sought to amend that submission so that it would expressly encompass their dispute about the compact's legality and enforceability. When the city attempted to develop that subject during the arbitration, the union repeatedly objected that it was irrelevant to the issues submitted.

Hence, the arbitrators were obliged to decide whether that subject was properly part of the issues which they were authorized to decide. They concluded that it was not. Their construction of the underlying contract should have significant weight. Cf. *United Steelworkers of America* .v. *Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 599; *Brennan* v. *Brennan* (1955), 164 Ohio St. 29 39-40 [57 O.O. 71]. The arbitrators have limited discretion to determine whether a specific dispute is part of the arbitration package or a separate unsubmitted controversy.

If the arbitrators expressly decline to consider a critical issue within the scope of the submission, a court can properly vacate the award. R.C. 2711.10 (D); *Huffman* v. *Valletto, supra,* at 63. By contrast, the court cannot vacate an award because the arbitrators reasonably construe the scope of their authority as excluding a severable controversy. Cf. *Employee Protective Assn.* v. *Norfolk & Western Ry.* (C.A. 4, 1977), 571 F. 2d 185, 194 (subsequent agreement outside scope of arbitration).

In effect, these arbitrators decided the three submitted issues by applying the five relevant factors in the underlying contract. They did not consider or decide whether the wage-restricting compact superseded the underlying contract, concluding that they had no authority to resolve that dispute. The trial court agreed "that the compact was independent of * * * the 1979 Memorandum of Understanding." We cannot say that the arbitrators abused their limited discretion by their definition of the issues submitted. Cf. *McKay* v. *Corporate Properties* (1950), 276 App. Div. 351, 352, 94 N.Y. Supp. 2d 599, 601 (arbitrator lacks power to decide effect of later agreement); *District 2, Marine Engineers* v. *Falcon Carriers, Inc.* (S.D.N.Y. 1974), 374 F. Supp. 1342 (same).

Consequently, the court properly confirmed and enforced the arbitration decision. However, the court mistakenly gave that decision greater breadth than it deserved. The arbitrators expressly disclaimed any decision about the validity or effect of the later compact. The court treated their decision as precluding any further litigation of that issue on *res judicata* grounds.

An arbitration award has the same preclusive effect as a court judgment for the matters it decided. *International Union* v. *Weatherhead Co.* (N.D. Ohio 1962), 203 F. Supp. 612, affirmed (1963), 316 F. 2d 239. Ordinarily, an arbitration decision does not preclude subsequent litigation for issues which might have been decided but were not. *Louison* v. *Fischman* (1960), 341 Mass. 309, 313-314, 168 N.E. 2d 340, 343; cf. *Alexander* v. *Gardner-Denver Co.* (1974), 415 U.S. 36 (civil rights lawsuit not barred by arbitration of discrimination claim under collective bargaining agreement). Since arbitrators derive their authority from limited contractual terms and their decisions are not appealable, they should not have the broader claim-preclusion effect attributed to court cases. However, the party seeking to avoid issue preclusion

has the burden of showing that the arbitrators did not decide that issue. *Louison* v. *Fischman, supra*; cf. *Napoleon Steel Contr., Inc.* v. *Monarch Constr. Co.* (1982), 3 Ohio App. 3d 410, 412 (discovery available for that purpose).

The city may have asserted its claim about the compact more expediently by seeking declaratory relief before submitting the issues to arbitration. Cf. *McKay* v. *Corporate Properties, supra.* Such a prearbitration suit could have resolved the dispute about the compact's significance or determined whether that dispute was subject to arbitration. The city's failure to seek such declaratory relief earlier does not waive its right to have that issue adjudicated.

The union successfully persuaded the arbitrators not to consider that severable issue. Thus, the union cannot complain that the city still seeks resolution of this unresolved issue. The city's first two assigned errors are overruled; its third claimed error is sustained.

The trial court's judgment confirming the arbitration award is affirmed, but its dismissal of the declaratory relief action is reversed. We remand the case for a determination of the effect of the alleged compact agreement on the rights established by the arbitration decision. The trial court should not enforce the confirmed arbitration decision until it determines whether the claimed compact supersedes the rights adjudicated by the arbitration. We express no opinion on the merits of the city's claim that the asserted compact supersedes the arbitration award.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

JACKSON and ANN MCMANAMON, JJ., concur.