BORDONARO, Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, Appellee.

[Cite as *Bordonaro v. Merrill Lynch, Pierce, Fenner & Smith,* 156 Ohio App.3d 358, 2004-Ohio-741.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82806.

Decided Feb. 19, 2004.

Hermann Cahn & Schneider, Anthony J. Hartman, Hugh D. Berkson and Jay H. Salamon, for appellant.

Ari H. Jaffe, Byron S. Krantz and Steven R. Malynn, for appellee.

_____

KARPINSKI, Judge.

{¶ 1} Plaintiff Cosmo L. Bordonaro appeals from the trial court's denying his motion to vacate an arbitration award in favor of defendants, Louis Telerico and Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch").[1]  For the reasons that follow, we reverse the judgment of the trial court.

{¶ 2} Plaintiff, a longtime client of defendants, brought various claims against them for mishandling his securities accounts.  Among other claims, plaintiff sought recompense for defendants' negligent advice and mishandling of his accounts.  Plaintiff sought damages in excess of $300,000.  Defendants denied any wrongdoing.

_____

1.  Telerico is a stockbroker and employee of Merrill Lynch, a securities brokerage firm.

{¶ 3} The parties submitted the dispute to binding arbitration before the National Association of Securities Dealers ("NASD").[2] A panel of three arbitrators approved by NASD conducted the arbitration. During the hearing, the arbitration panel granted defendants' motion in limine. That motion requested the panel to exclude plaintiff's expert, Ross Tulman, from testifying on any issues related to their liability in the case. The panel granted the motion and limited Tulman's testimony to damages only. Following a three-day hearing, the arbitration panel rendered its award in favor of defendants. In the trial court, plaintiff filed a motion to vacate the arbitration award. The trial court denied the motion, and plaintiff timely appeals from that order. Plaintiff presents one assignment of error:

> "The lower court erred in failing to vacate the award of NASD arbitrators whose refusal to hear pertinent, material, non-cumulative evidence deprived appellant of a fundamentally fair hearing."

{¶ 4} Plaintiff argues that the trial court erred in refusing to vacate the arbitration award in favor of defendants. According to plaintiff, the arbitrators' award must be vacated because they refused to hear testimony from plaintiff's expert, Ross Tulman, on the standard of care applicable in this case.

{¶ 5} A trial court cannot vacate an arbitration award unless one of the following criteria set forth in R.C. 2711.10 [3] is affirmatively shown:

> "The award was procured by corruption, fraud, or undue means.

> "There was evident partiality or corruption on the part of the arbitrators, or any of them.

> "The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, *or in refusing to hear evidence pertinent and material to the controversy*; or of any other misbehavior by which the rights of any party have been prejudiced.

> "The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (Emphasis added.)

{¶ 6} On appeal, the substantive merits of an arbitration award are not reviewable "absent evidence of material mistake or extensive impropriety." *Cleveland v. FOP, Lodge No. 8,* (Mar. 23, 2000), Cuyahoga App. No. 75892, 2000

---

2. The parties do not dispute that the account agreement between them required NASD arbitration.

3. In arbitration matters, Ohio courts follow rules common to those used by the federal courts. *Council of Smaller Enterprises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352.

WL 301075, at * 2, 2000 Ohio App. LEXIS 1173, at * 7, citing *Flooring Specialties v. Moran Constr., Inc.* (Aug. 10, 1995), Cuyahoga App. No. 68548, 1995 WL 472807, citing *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 330 N.E.2d 703. "Binding arbitration precludes judicial review unless the arbitrators were corrupt or committed gross procedural improprieties." *Znidar v. Gates,* (July 11, 1991), Cuyahoga App. No. 60942, 1991 WL 125347; *Cleveland v. Assn. of Cleveland Fire Fighters, Local 193* (1984), 20 Ohio App.3d 249, 20 OBR 311, 485 N.E.2d 792.

{¶ 7} Typically, the "rules of evidence are relaxed in an arbitration proceeding." *Cleveland v. AFSCME, Local 100*, Cuyahoga App. No. 74467, 1999 Ohio App. LEXIS 3595, at *12, 1999 WL 588238; *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 44, 23 OBR 57, 491 N.E.2d 298. However, if the exclusion or admission of evidence during an arbitration results in a gross procedural impropriety, vacating the award is then required. *Busch v. Wilcox* (Apr. 11, 1991), Delaware App. No. 90–CA–29, 1991 WL 57183.

{¶ 8} Because of the relaxed format in an arbitration, any relevant evidence, even some forms of hearsay, could be admissible in such a proceeding. Evid.R. 402.

{¶ 9} In the case at bar, plaintiff argues that R.C. 2711.10(C) requires the arbitrators' award to be vacated because they refused to hear Tulman's testimony on industry customs and practices and the applicable standard of care in this case. According to plaintiff, Tulman's testimony was "pertinent and material" to many of his claims, and, therefore, his inability to present that testimony deprived him of a full and fair hearing.

{¶ 10} In response, defendants argue that only the arbitrators should decide the issue of their liability and that "[h]is proposed testimony on these issues was intended by Appellant to usurp the decision-making authority of the arbitration panel." The exclusion of Tulman's testimony, defendants claim, therefore, does not rise to the level of a gross procedural impropriety and thus there are no grounds for vacating the arbitration award. We disagree. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704; *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 17 OBR 203, 477 N.E.2d 1116. "Evid.R. 704, adopted in 1980, now expressly allows for the admission of opinion on the ultimate fact in issue * * *." *Schaffter*, 17 Ohio St.3d at 81, 17 OBR 203, 477 N.E.2d 1116.

{¶ 11} Defendants produce no authority, nor does this court find any in support, for the proposition that a party cannot present evidence, expert or

otherwise, on the issue of customs/practices or the standard of care in a securities arbitration. Indeed, quite the opposite seems to be the accepted practice.

{¶ 12} Many federal courts have required testimony, expert and/or lay, about the rules of the NASD and/or the NYSE because those rules constitute the standard of care to which brokers are held. See *Javitch v. First Montauk Fin. Corp.* (N.D.Ohio 2003), 279 F.Supp.2d 931 (expert report described the rules of both NASD and NYSE and the manner in which defendant broker failed to follow those rules), citing *Miley v. Oppenheimer & Co., Inc.* (C.A.5, 1981), 637 F.2d 318, 333 (approving reference to violations of NYSE and NASD rules in an excessive-trading case as one of several factors to be considered); *United States v. Bloom* (E.D.Pa.1978), 450 F.Supp. 323; *Mihara v. Dean Witter & Co., Inc.* (C.A.9, 1980) 619 F.2d 814, 820 (admission of testimony regarding New York Stock Exchange and NASD rules was proper because the rules reflect the standard to which all brokers are held); *Stevenson v. Rochdale Invest. Mgt., Inc.* (Sept. 7, 2000), N.D.Tex. No. 3:97CV1554L, 2000 WL 1278479 (plaintiff's unsupported allegation that broker violated NASD rules, without more, may be evidence of the standard of care; it does not, however, constitute negligence per se).

{¶ 13} We initially observe that in a medical malpractice suit, expert testimony is not merely permitted, it is required. *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 62, 31 OBR 165, 508 N.E.2d 958, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

{¶ 14} "Whether a person professionally trained and licensed has exercised the degree of skill, care, and diligence required of his profession is a matter which can only be established by expert testimony. A layman, like the bricklayer or the general contractor here, may prefer to do things in a different way from that prescribed by the architect. This is not the same as stating that the architect failed to meet professional standards. Even an individual architect may have different personal preferences. Again this does not establish that an architect with different preferences is failing to come up to the standards of his profession." *Phillips v. I.W. Colburn & Assoc., Inc.* (Nov. 21, 1979), Montgomery App. No. 6148, 1979 Ohio App. LEXIS 10542, at * 29.

{¶ 15} It is well settled that a securities broker is a licensed professional. It follows, therefore, that expert testimony is useful in establishing the proper standard of care applicable in a securities matter. We find support for this position not only in cases decided in the courts of Ohio and elsewhere but, most persuasively, in arbitrations conducted before and decided by the National Association of Securities Dealers. See *Ferritto v. Olde & Co.* (1989), 62 Ohio

App.3d 582, 577 N.E.2d 101 (plaintiff's expert testified as to the standard of care owed by a professional stockbroker).

{¶ 16} Although it is not necessary to reach this issue here, there is authority supporting expert testimony as a requirement. *Investors Equity Life Ins. Co. of Hawaii v. ADM Investor Serv., Inc.* (Dec. 15, 1997), D.Haw. No. CV 97–01382 DAE, 1997 WL 33100645 (claimant failed to prove his case because he did not present expert testimony on the applicable standard of care); *In re Arbitration Between David D. Carey & Bonnie L. Carey, David Bass, M.D., Cynthia Coccia, J. David Creedon, Richard Fazio, Eunice K. Greenstein, Robert E. Hiler, Donald A. and Joan E. Jacobs, Peter B. Janes, David Kaplan, Charles W. and Sheila Kasmer, Michael T. Shea, and Sidney Ulreich v. Lowry Fin. Serv., Corp., Mut. Serv. Corp.* (Mar. 6, 1997), 1997 NASD Arb. LEXIS 1609; *In re Arbitration Between Thomas and Mary Louise Maloney v. PaineWebber, Inc., Paul R. Meese, Thomas P. Kelly* (Nov. 30, 1993), 1993 NASD Arb. LEXIS 968.

█ {¶ 17} In the case at bar, arbitrator Kerner and plaintiff's attorney, Hartman, engaged in the following exchange about Tulman's potential testimony:

"ARBITRATOR KERNER: * * *

"So, for right now, today, my agenda is for Mr. Hartman to take advantage of the remaining time to make sure he gets his complete case on liability in. And I think he wanted to interview one other witness, so—

"MR. HARTMAN: That and Mr. Tulman.

"ARBITRATOR KERNER: Right.

"MR. HARTMAN: But there's no way we're going to get him in.

"ARBITRATOR KERNER: Well, he doesn't go to liability, though.

"MR. HARTMAN: Well, he goes to the issue of custom and usage and suitability, and he'll be testifying as to industry standards. So it's not just damages. There are going to be issues as to what an expert will testify to, what standards apply and that type of thing.

"* * *

"ARBITRATOR KERNER: We're back on the record.

"Here's the situation that I wish to highlight for you and to think about overnight in preparing for tomorrow.

"We just had a suggestion from Mr. Hartman that Mr. Tulman be allowed to testify in regard to the liability aspect of the case. That was complete news to me, and I wish to be very careful and be sure that everybody understands the distinction I'm drawing here because there's a pending motion from a couple of weeks ago in which the respondent has objected to Mr. Tulman's testifying with regard to damages and as to his appropriate qualifications and other

factors relating to his ability to testify with respect to damages. That was all that was anticipated in the motion, the way I read it.

"MR. KRANTZ: Yes, sir.

"ARBITRATOR KERNER: And that's all that I heard referenced in the response. And I wanted to just interject, gentlemen, there's a very high level of emotion in both that motion and response, and it's caused the panel to take some due note.

"But with respect to the issue of liability, you're dealing with two lawyers who have quite a bit of experience between us, and a stockbroker who also has a lot of experience. But in the particular matter of dealing with this issue, we are of a like mind as a panel, and the liability aspect of this matter really rests with the panel. We are the experts. We are going to decide what's going to be the appropriate standard to apply and whether the standard has been met in this case.

"* * *

"Now, having said all that, I am seeking a statement from Mr. Hartman, counsel for the plaintiff, that you have called anyone and everyone you choose to call with respect to liability.

"* * *

"MR. HARTMAN: * * * I've been trying arbitrations and lawsuits for 30 years, and during that period of time, I've always been able to have an expert put on, and I'm not talking about somebody who's going to conclude what you should do, but put on the standard of care that has developed in the industry upon which we're going to argue our negligence theories and that type of thing. "* * *

"ARBITRATOR KERNER: That is the ruling of the panel, number one, and it is a ruling that's bilateral. It applies to both parties. We're going to decide the issue of liability based on the facts of those who are preeminently present and are involved in these transactions. We really don't care a whole lot about somebody who's from an outside organization, who's never been at One Cleveland Circle, who didn't know Mr. Bordonaro 14 years ago when you first met him, or had the interactions and developed a pattern of conduct that's at issue in this case. That's what we're concerned about. You tell us by sort of a proposal of law what you think the standard is that should apply, but we apply it."

{¶ 18} Tulman testified later in the proceeding, but only on the issue of damages.

{¶ 19} In its closing statement at the hearing, defendant argued that the entire case involved answering the question of "whether or not the recommendations that were made by Lou Telerico and Merrill Lynch were suitable * * *."

{¶ 20} In a securities case, the issue of suitability involves questions related to whether the securities representative has reasonable grounds to believe that the security transactions recommended to a customer are suitable for that customer.

{¶ 21} In *Community Hosp. of Springfield & Clark Cty., Inc. v. Kidder, Peabody & Co.* (S.D.Ohio 1999), 81 F.Supp.2d 863, plaintiff's expert testified about the suitability of the investments defendant recommended to the plaintiff.

{¶ 22} On the issue of suitability, the court stated as follows:

"The suitability of a transaction for a particular customer is an indispensable element in the process of making securities transaction recommendations. * * * Registered representatives should recommend only those security transactions to a customer that the registered representative has reasonable grounds to believe are suitable for that customer.

"* * *

"According to Frager, these requirements are mandated by Section 2, Article III, of the NASD Rules of Fair Practice. Frager testified that, in his opinion, the hospital was not a suitable candidate for the products Beale sold it. In his opinion, the hospital was not a high risk investor and the recommendation of inverse floaters was entirely inappropriate. In his opinion, the hospital was an unsophisticated purchaser which was unable to independently evaluate the risks associated with this kind of investment. In Frager's opinion, inverse floaters were not a suitable investment for a small not-for-profit hospital. He said that in thirty years, he had never seen this type of product in the portfolio of any hospital. Frager pointed out that the hospital's investment policy specifically listed twelve or thirteen kinds of investment vehicles, and that although inverse floaters were included in the list, they were incongruous with the other investments contained in the list. In his opinion, any investment professional would have realized that inverse floaters were inconsistent with the underlying investment objectives specifically set forth in the hospital's statement of investment policy. Id. at pp. 126, 130, 131. Frager was asked to sum up his opinion about the suitability of Kidder's sale of inverse floaters to the hospital:

" 'Q. Did you have any question in your mind at all about the suitability—Is this a close issue or not a close issue in your mind?'

"This is not even close. This is off the wall." Id.; *GMS Group, LLC v. Benderson* (C.A.2, 2003), 326 F.3d 75 (expert testimony given on issue of suitability); *O'Connor v. R.F. Lafferty & Co.* (C.A.10, 1992), 965 F.2d 893.

{¶ 23} In the case at bar, the arbitration panel decided that Tulman could not testify about liability and excluded his testimony. The Rules of Evidence, however, do not support the exclusion of Tulman's testimony, even if it were focused solely on liability, which we do not believe would have been the focus. On the contrary, the record is clear that Tulman was supposed to testify about the standard of care and industry customs and practices. Such testimony would not have been dispositive of defendants' liability or an invasion of the arbitrators' ability to decide that issue.

{¶ 24} Moreover, the record shows that virtually all of defendants' witnesses, including Telerico himself, were experienced securities professionals with more than 80 years' experience between them in the industry. The hearing transcript shows that the testimony of each of the witnesses touched on practices at Merrill Lynch and within the securities industry, generally. Though not expressly designated as experts, each of defendants' witnesses testified about the very issues plaintiff wanted Tulman to talk about. Once Tulman was excluded, however, plaintiff could not and did not present any evidence about such matters.

{¶ 25} The record also shows that the panel, despite its claim to know what the pertinent industry practices were, inquired about such practices during the hearing. During plaintiff's cross-examination of Telerico, arbitrator Kerner asked Telerico the following questions:

"ARBITRATOR KERNER: You bought and sold stocks for clients, correct?

"THE WITNESS: That is correct. I would have been an account executive.

"ARBITRATOR KERNER: And that's what a broker does as common policy? Not necessarily at Merrill Lynch, but as common policy?

"THE WITNESS: In general terms, yes."

{¶ 26} At the end of the hearing in this case, the panel verbally delivered its award to the parties. Several of its findings are directly related to defendants' conduct against the backdrop of industry customs and practices and the standard of care relating to the issues of suitability, negligence, and breach of contract. Arbitrator Kerner made the following statements:

"The panel has determined, secondly, with regard to the duty to obtain and indicate suitable securities, that there's been no violation by Mr. Telerico or by the company. We feel that there were standing trading strategies in place with respect to Mr. Bordonaro's accounts, and that Mr. Telerico assessed the suitability of the vehicles he recommended to Mr. Bordonaro in each and every

case, and the evidence does not show a violation of the rules, regulations, or customs of the industry in this regard.

"Thirdly, we find no negligence of any sort that is actionable on the part of Mr. Telerico or Merrill Lynch with regard to its or his conduct as being inappropriate in this case.

"Fourthly, we find no breach of fiduciary duty by Mr. Telerico.

"Fifthly, we find no breach of contract in relation to NASD rules."

{¶ 27} On the record before this court, it is evident that it was error to prevent plaintiff from presenting expert testimony on most of the issues the panel decided. Without Tulman's testimony, the trial court was without any evidence as to the standards, customs, and practices the panel used to determine that defendants had no liability. And the appellate court also has been deprived of this information. Tulman would have testified about the particular standards and industry practices defendants should have followed in handling plaintiff's accounts. Without that testimony, plaintiff was prevented from presenting evidence that was material and pertinent to his case. We conclude that the panel's exclusion of Tulman's testimony eviscerated plaintiff's case and thus amounts to a gross procedural impropriety. Accordingly, the trial court erred in denying plaintiff's motion to vacate the arbitration award. Plaintiff's sole assignment of error is sustained.

Judgment accordingly.

FRANK D. CELEBREZZE JR., P.J., and SEAN C. GALLAGHER, J., concur.