DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Mark Figetakis ("Figetakis"), appeals the judgment of the Summit County Court of Common Pleas granting summary judgment to Appellee, Business Data Systems, Inc. ("BDS"). We affirm.
 {¶ 2} "[BDS] originally filed suit in Akron Municipal Court against Gourmet Café Corporation (`Gourmet Café') and [Figetakis] for breach of lease by Gourmet Café. [BDS's] claim was based on [Figetakis's] guarantee of that lease in his individual capacity. Gourmet Café and [Figetakis] counterclaimed against [BDS] in an amount in excess of the municipal court's jurisdiction and the case was transferred to the Summit County Court of Common Pleas. [Figetakis's] *Page 2 
counterclaim was filed on October 4, 2002." Business Data Systems, Inc.v. Figetakis, 9th Dist. No. 22783, 2006-Ohio-1036, at ¶ 2
("Figetakis II ").
 {¶ 3} "On January 16, 2003, the trial court assigned the case to arbitration pursuant to S.C.C. Loc.R. 10." Id. at ¶ 3. "On April 17, 2003, the arbitrators filed their report in which they found in favor of [BDS] in the amount of $9,050.60. The arbitrators' report and award stated a finding for `Plaintiff on Defendant's counterclaim.' The trial court entered a final judgment adopting the report and award of the arbitrators on May 29, 2003. On appeal from that order, [Figetakis] challenged a nunc pro tunc order issued by the court which found that the arbitrators' report and award pertained to both [Figetakis] and Gourmet Café." Id at ¶ 3.
 {¶ 4} "Upon review, this Court held that the trial court erred in concluding that the arbitration award applied to both [Figetakis] and Gourmet Café, finding instead that the order only pertained to Gourmet Café. See Business Data Systems, Inc. v. Gourmet Café Corp., 9th Dist. No. 22096, 2005-Ohio-4. ["Figetakis I "]" Figetakis II at ¶ 4.
 {¶ 5} "On June 2, 2005, [BDS] filed a dismissal pursuant to Civ.R. 41(A) dismissing its claims against [Figetakis]." Figetakis II at ¶ 5. At that time, "[t]he only pending claim in [the] matter [was] [Figetakis's] counterclaim against [BDS]. On June 2, 2005, [BDS] also filed a motion for judgment on the pleadings with respect to [Figetakis's] counterclaim. [BDS] attached the following documents to *Page 3 
its motion: (1) [Figetakis's] answer and counterclaim, (2) Gourmet Café's answer and counterclaim, (3) the report and award of the arbitrators, (4) the trial court's judgment entry adopting the arbitrators' award and (5) case law. In the motion, [BDS] contended that the doctrine of res judicata preclude[d] [Figetakis] from relitigating the issues in the counterclaim because these issues were decided pursuant to the trial court's May 29, 2003 judgment. On June 3, 2005, [Figetakis] filed a reply brief. The trial court granted [BDS's] motion on June 13, 2005." Id. at ¶ 5.
 {¶ 6} Figetakis appealed the trial court's June 13, 2005 order. On March 8, 2006, in Figetakis II, we reversed and remanded this matter back to the trial court, finding that the trial court erroneously considered documents (the arbitration award) outside of the pleadings when it granted BDS's Civ.R. 12(C) motion. Figetakis II at ¶ 10.
 {¶ 7} On November 1, 2006, the trial court sua sponte gave BDS leave to file a motion for summary judgment related to Figetakis's counterclaims. On November 7, 2006, Figetakis filed a "Notice of Judicial Error," challenging the trial court's November 1, 2006 order and requesting a hearing. BDS filed its motion for summary judgment on November 9, 2006. Figetakis moved for additional time to file a response to BDS's motion for summary judgment and on December 1, 2006, the trial court granted Figetakis's motion giving him until January 30, 2007, to respond to BDS's motion for summary judgment. *Page 4 
 {¶ 8} On January 30, 2007, Figetakis filed a "Motion for Voluntary Recusal" requesting that the then presiding judge recuse herself, alleging that the trial court was "biased[,] and prejudiced and also abused its discretion against Mark Figetakis." Alternatively, Figetakis's January 30, 2007 motion sought additional time to respond to BDS's motion for summary judgment. BDS moved to strike Figetakis's January 30, 2007 motion. On February 5, 2007, the trial court denied Figetakis's motion for voluntary recusal and granted Figetakis until March 23, 2007, to respond to BDS's motion for summary judgment. On March 22, 2007, Figetakis filed his "answer and objection" to BDS's motion for summary judgment, attaching his affidavit thereto. Figetakis did not argue that BDS had waived its right to assert the doctrine of res judicata in his March 22, 2007 answer and objection. BDS responded to Figetakis's March 22, 2007 filing on March 30, 2007.
 {¶ 9} On April 18, 2007, the trial court entered an order, stating that, "[i]n the interest of judicial economy, the court requires Figetakis to clarify his counterclaim." The trial court's order then gave Figetakis "thirty days from the filing of this order to provide the Court and opposing counsel a clear and concise statement of his cause of action and his alleged damages." The trial court's April 18, 2007 order further provided that "in preparation for the impending trial, both parties must provide a list of witnesses and exhibits they intend to use at trial *Page 5 
within thirty days of the filing of this order. Business Data Solution's Motion for Summary Judgment is hereby held in abeyance for thirty days."
 {¶ 10} On May 9, 2007, Figetakis filed a "Counterclaim, Witness List and Evidence List Documentation," to which was attached (1) a copy of Figetakis's original counterclaim with two paragraphs added, presumably to clarify his claim; (2) a witness list; and (3) an evidence list. Once again, Figetakis did not argue that BDS had waived its right to assert the defense of res judicata. On May 15, 2007, BDS filed its witness and exhibit list, as well as a supplemental brief in support of BDS's motion for summary judgment. Figetakis moved to strike the supplemental brief on May 16, 2007, as being untimely filed.
 {¶ 11} On June 18, 2007, the trial court entered judgment after reviewing all of the filings and incorporated its April 18, 2007 order by reference. In its June 18, 2007 order, the trial court stated:
 "The latest revision of [Figetakis's] [c]ounterclaim seems to be making new allegations of forgery, fraud and violations of consumer protection laws. While the court gives leeway to pro se pleadings, this new information Figetakis included did not articulate any new causes of action. He failed to offer specific rather than conclusory allegations, and has failed to differentiate the counterclaim sub judice from the original counterclaims."
The trial court then found that, "the cause of action has been previously adjudicated" in arbitration. The trial court further held that Figetakis and Gourmet Café had identical counterclaims and that the former was the sole shareholder of the latter, thereby putting them in privity with each other. The trial court then *Page 6 
granted BDS's motion for summary judgment based on the doctrine of res judicata ("Judgment Entry").
 {¶ 12} Figetakis timely appealed the Judgment Entry and raises two assignments of error.
 First Assignment of Error "The trial court erred in finding [Figetakis's] counterclaims barred by res judicata since [BDS's] failure to plead res judicata as an affirmative defense constitutes a waiver of the defense."
 {¶ 13} Figetakis argues that BDS failed to plead the affirmative defense of res judicata pursuant to Civ.R. 8(C) and failed to later amend the pleadings pursuant to Civ.R. 15(A) and, therefore, waived that defense. It is true that BDS's answer to Figetakis's counterclaim did not assert the affirmative defense of res judicata; however, we disagree that BDS waived this defense.
 {¶ 14} We initially note that, "a party seeking to establish waiver bears a heavy burden of proof." Manos v. Vizar (July 9, 1997), 9th Dist. No. 96CA2581-M, at *2. This Court has held that in the context of a waiver of an arbitration provision, "doubt as to the existence of a waiver is resolved against the party asserting it." Rimedio v.SummaCare, Inc., 9th Dist. No. 21828, 2004-Ohio-4971, at ¶ 13, quotingManos v. Vizar (July 9, 1997), 9th Dist. No. 96CA2581-M, at *2. Under the facts of this case, we find Figetakis has failed to meet his burden, that any assertion of waiver must be construed against him, and that Figetakis has forfeited his right to challenge BDS's res judicata argument. *Page 7 
 {¶ 15} The issue of res judicata was addressed by implied consent of the parties as is evidenced by: (1) BDS's Civ.R. 12(C) motion based on res judicata and Figetakis's response thereto, in which Figetakis did not argue waiver; and (2) BDS's motion for summary judgment and Figetakis's response thereto, in which Figetakis did not argue waiver. See Conner v. Brown (Apr. 19, 1991), 11th Dist. No. 90-T-4345, at *2. Because the issue of res judicata was addressed by the trial court via the implied consent of Figetakis, Figetakis has not met his burden and, in fact, has forfeited any right to challenge BDS's right to assert the doctrine. The defense of res judicata shall be treated as if it had been raised in the pleadings. C.f. Jeff Miller Co., Inc. v. Golden GateApartments, Inc., (May 24, 1979), 10th Dist. No. 78AP-754, at 4 (finding defendant waived affirmative defense of waiver because it was not pled as an affirmative defense and because there was no evidence that "the issue of waiver was tried by consent of the parties either express or implied."); Wheeler v. Wein (Aug. 2, 1977), 10th Dist. No. 77AP-241, at *4 (finding failure to raise waiver as an affirmative defense did not act as a waiver where opposing party made no objection on the record to evidence presented to establish waiver).
 {¶ 16} That BDS did not actually move to amend or amend its answer to Figetakis's counterclaim to include this affirmative defense does not change our conclusion. In Zaychek v. Nationwide Mut. Ins. Co. 9th Dist. No. 23441, 2007-Ohio-3297, we reversed summary judgment in favor of Nationwide and held that *Page 8 
if a party had properly objected to an alleged new argument when raised by the opposing party, "appellants could have moved to amend their complaint. In the absence of such an objection, * * * appellants implicitly consented to the trial court's consideration of the new argument. Zaychek at ¶ 15.
 {¶ 17} For the foregoing reasons, we hold that BDS did not waive the affirmative defense of res judicata. Figetakis's first assignment of error is overruled.
 Second Assignment of Error "The trial court erred in granting [BDS] summary judgment on the basis that [Figetakis's] claim is barred by the affirmative defense of res judicata."
 {¶ 18} For his second assignment of error, Figetakis asserts that the trial court erred by: (1) sua sponte granting BDS leave to file its motion for summary judgment four years after the case commenced; and (2) finding that res judicata prevented the "relitigation" of Figetakis's counterclaim. Figetakis asserted in response to BDS's motion for summary judgment that res judicata did not apply because Figetakis and Gourmet Café were not in privity; that no valid judgment was rendered against him; and that the arbitration hearing was not a full and fair hearing of the merits of Figetakis's counterclaim.
 {¶ 19} Appellate courts review decisions on summary judgment de novo, viewing the facts as most favorable to the non-moving party and resolving any doubt in favor of that party. Grafton v. Ohio EdisonCo. (1996), *Page 9 77 Ohio St.3d 102, 105; Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law and reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 20} Civ.R. 56(A) states that "[a] party may move for summary judgment at any time after the expiration of the time permitted under these rules for a responsive motion or pleading by the adverse party, or after the service of a motion for summary judgment by the adverse party. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court."
 {¶ 21} Civ.R. 56(A) does not state that leave may only be granted by the court if a party moves for leave. "It is well-settled that a trial court has the inherent power to control its own docket and the progress of proceedings in its court." Pavarini v. City of Macedonia (Apr. 18, 2001), 9th Dist. No. 20250, at *3, citing State ex rel. Kura v.Sheward (1992), 75 Ohio App.3d 244, 245. "Docketing decisions can be overturned only where there has been an abuse of discretion."Pavarini at *3, citing State v. Unger (1981), 67 Ohio St.2d 65, 67. Moreover, as we held in Figetakis II, "the proper mode for raising the defense of res judicata is through a motion for summary judgment after an answer is filed." *Page 10 Figetakis II at ¶ 11 (noting that res judicata cannot be asserted in a motion for judgment on the pleadings).
 {¶ 22} With regard to Figetakis's claim that the trial court erred in sua sponte allowing BDS to file its motion for summary judgment, the record reflects that the trial court gave Figetakis ample opportunity, including two extensions of time to argue his position in response to [BDS's] summary judgment motion. Figetakis so responded. Moreover, Figetakis has not argued that he was in any way prejudiced by the late leave given to BDS, nor has he cited any authority for his proposition that a trial court's sua sponte grant of leave to file a motion for summary judgment is an abuse of discretion under the facts of this, or any other case. Given the trial court's discretionary powers to control its docket, this Court cannot say that the trial court's decision to grant BDS leave to file a motion for summary judgment was arbitrary, unreasonable or unconscionable.
 {¶ 23} As to the trial court's grant of summary judgment in favor of BDS based on the doctrine of res judicata, we agree with the trial court.
 {¶ 24} Figetakis made the following assertions in his six-paragraph counterclaim against BDS: (1) that BDS breached the lease agreement; (2) that BDS was unjustly enriched; and (3) that BDS made false representations about the subject of the lease agreement, i.e., that a computerized cash register system was new when it was not. The case proceeded to arbitration on BDS's complaint and *Page 11 
the above counterclaims and on April 17, 2003, the arbitrator filed a report and award in favor of BDS.
 {¶ 25} Subsequent thereto, as set forth fully above, the trial court issued its April 18, 2007 order, stating, in relevant part:
 "The matter is before this court on [BDS's] Motion for Summary Judgment, [based on res judicata) * * * against Figetakis' counterclaim.
 "Originally, the Counterclaim stated that [BDS] charged Figetakis for the lease of new cash registers while it in fact supplied used cash registers. In more recent filings, Figetakis has alleged fraud on the court, requested punitive damages and made numerous other arguments. This Court acknowledges that pro se litigants[1] are to be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities, while at the same time they are to remain subject to the same rules and procedures as a represented litigant.
 "This case has been ongoing for over four years and, after two appeals, is now approaching trial. In the interest of judicial economy, the court requires Figetakis to clarify his counterclaim. The alleged facts are clear enough; Figetakis claims that the cash registers he leased from [BDS] * * * were of lesser value than the agreement called for. However, should [BDS's] Motion for Summary Judgment be denied, it is no longer clear what legal causes of action Figetakis plans to pursue at trial, or what damages he intends to show. In order for the Court to meet its aspirations towards fairness and judicial economy in this matter, [BDS] must be made aware of Figetakis' specific cause of action and what his alleged damages are in a reasonable time before the case is brought before a jury. Figetakis is hereby granted thirty days from the filing of this order to provide the Court and opposing counsel a clear and *Page 12 
concise statement of his cause of action and alleged damages." [Citations omitted].
The April 18, 2007 order also ordered both parties to file exhibit and witness lists within 30 days of the order.
 {¶ 26} In response to the trial court's April 18, 2006 order, Figetakis filed a document entitled "Counterclaim, Witness List and Evidence List Documentation," to which Figetakis attached a copy of his original counterclaim with two paragraphs added. The two additional paragraphs stated:
 "7. Questioned Document Report. Expert document school graduate Michael Robertson report dated May 20, 2005 regarding lease/applicat [sic] agreement verifying no date on document agreement, fraudulent and forged and altered signature of [Figetakis] on the back page of alleged guarantee and no date. A later date on the application lease dated 6-11-09 was fraudulent, forged and altered by [BDS] president James Coffelt. Ther [sic] are other forgeries an alterations specifically verified by expert document questioned in the report of Michael Robertson.
 "8. Fraud and Unjust Enrichment: letter dated February 15, 2001 state [sic] `The system was virtually new when originally. [sic] It was virtually new when stolen.' Document signed by [BDS] president James Coffelt, Invoice No. 24152, by [BDS] president verifying specific items of lease by Digital Dining System: 2 used termina [sic][,] 2 used printers, one computer (no monitor), $6900.00 dollars. This unjust enrichment and deceptive activity by [BDS], in effect a `bait and switch['] unlawful activity by actually sending and knowingly installing used equipment, when alleging and billing for new equipment is unlawful and an issue for a jury to decide. Used equipment has a auction or sales value of approximately 75% less value than new equipment." [Emphasis sic].
In the Judgment Entry granting summary judgment to BDS, the trial court states:
 "What remains less clear are the causes of action Figetakis is attempting to articulate. The latest revision of the Counterclaim *Page 13 
seems to be making new allegations of forgery, fraud and violation of consumer protection laws. While the court gives leeway to pro se pleadings, this new information Figetakis included did not articulate any new causes of action. He failed to offer specific rather than conclusory allegations, and has failed to differentiate the counterclaim sub judice from the original counterclaims."
The trial court then cites this Court's opinion in Figetakis II, stating that "`[p]roper application of the doctrine of res judicata requires that the identical cause of action shall have been previously been adjudicated in a proceeding with the same parties, in which the party against whom the doctrine is sought to be imposed shall have had a full and fair opportunity to litigate the claim. [Figetakis II, at ¶ 11, citing] Brown v. Vaniman (Aug. 20, 1999, 2nd Dist. No. 175303.'"
 {¶ 27} The trial court then stated that it: "finds that the cause of action has previously been adjudicated." The trial court found that the identical cause of action had already been arbitrated between the same parties as the
 "[c]ounterclaim filed by [Figetakis] in 2002 was identical to the [c]ounterclaim filed by Gourmet Café Corporation [and] both dealt with the lease of the allegedly used cash registers. From the identical nature of the [c]ounterclaims at the time of filing, it is evident that the claims pertain to the same set of facts and the same transaction. They arise out of the same occurrence and the current counterclaim could only raise the same arguments that the older counterclaim raised in the arbitration."
The arbitration award found for BDS on Gourmet Café's counterclaims.
 {¶ 28} We agree with the trial court. The two new paragraphs of Figetakis's revised counterclaim, at best, simply provide the court with evidence *Page 14 
or argument that Figetakis intends to present at trial in support of his already existing counterclaim. They do not set forth any new claims.
 {¶ 29} As to the requirement that the parties be identical and/or in privity with each other so as to apply the doctrine of res judicata, the Supreme Court of Ohio has "applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine." Kirkhart v. Keiper (2004), 101 Ohio St.3d 377,2004-Ohio-1496, at ¶ 8, citing Brown v. Dayton (2000),89 Ohio St.3d 245, 248. "Thus, `a mutuality of interest, including an identity of desired result,' may create privity." Kirkhart at ¶ 8, quotingBrown, 89 Ohio St.3d at 248.
 {¶ 30} Although the arbitration award found for Plaintiff (BDS) on Defendant Gourmet Café's counterclaims without specifically referencing Figetakis, it is undisputed that Figetakis is the sole shareholder of Gourmet Café; that the counterclaims of both Figetakis and Gourmet were identical; that Figetakis was present at arbitration; and, that Figetakis and Gourmet Café were represented by the same counsel at arbitration and in filing their counterclaims.
 {¶ 31} Other appellate districts have held that a corporation is in privity with its shareholders and we agree. Godale v. Chester Tp. Bd. ofTrustees, 11th Dist. No. 2004-G-2571, 2005-Ohio-2521, at ¶ 47, citingGrant Fritzsche Ent, Inc. v. Fritzsche, 107 Ohio App.3d 23, 25;Keeley Assoc, Inc. v. Integrity Supply, Inc. (1997),120 Ohio App.3d 1, 4; Yo-Can, Inc. v. Yogurt Exchange, Inc. (Dec. *Page 15 
17, 1998), 7th Dist. No. 95 CA 72, at *4. The real issue in determining privity between parties in the context of a res judicata claim is whether the party had a right to control the proceedings, raise a defense, adduce evidence, cross-examine witnesses and appeal the proceedings. Hainbuchner v. Miner (1987), 31 Ohio St.3d 133, 137
(addressing the application of res judicata between co-defendants in an action). Gourmet Café could not speak for itself other than through its sole shareholder, Figetakis. Both Figetakis and Gourmet Café fully litigated their counterclaims during arbitration when they were represented at the proceeding by the same attorney. There is nothing in the record to establish that Figetakis and Gourmet Café had separate interests to protect and/or were adverse to each other.
 {¶ 32} Moreover, Loc.R. 10.15 states, that the Arbitrator's "Report and Award, unless appealed from as herein provided, shall be final and have the attributes and legal effect of a verdict." Loc.R. 10.17 allows a party to appeal an arbitration award within 30 days after the filing of the award. Neither Gourmet Café nor Figetakis appealed the arbitrator's award issued on April 17, 2003. "If no appeal is taken with the time and in the manner specified therefore the Court shall enter judgment in accordance therewith." Loc.R. 10.15. The trial court entered judgment on May 29, 2003.
 {¶ 33} Accordingly, because "an arbitration award has the same preclusive effect as the court judgment for the matters it decided," we find no genuine issue of material fact remaining vis-à-vis Figetakis's counterclaims. City of Cleveland v. *Page 16 Assoc. of Cleveland Firefighters, Local 93 (1984), 20 Ohio App.3d 249,254. The trial court properly granted summary judgment to BDS on Figetakis's counterclaims.
 {¶ 34} Figetakis's second assignment of error is overruled.
 {¶ 35} Both of Figetakis's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Moore, J., Dickinson, J., CONCUR.
[1] At the time this matter was before the trial court on BDS's motion for summary judgment Figetakis was pro se; however, Figetakis was represented at the time he filed his original counterclaim and at arbitration. *Page 1