[Cite as *Wright State Univ. v. Fraternal Order of Police*, 2017-Ohio-854.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| WRIGHT STATE UNIVERSITY | : | |
| | : | Appellate Case No. 2016-CA-35 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 16-CV-36 |
| v. | : | |
| | : | (Civil appeal from Greene |
| FRATERNAL ORDER OF POLICE, | : | County Common Pleas Court) |
| OHIO LABOR COUNCIL, INC., | : | |
| POLICE OFFICERS AND POLICE | : | |
| SERGEANTS | : | |
| | | |
| Defendants-Appellees | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of March, 2017.

. . . . . . . . . .

MICHAEL DeWINE, Attorney General of Ohio, by DAVID S. KESSLER, Atty. Reg. No. 0041982, Blaugrund Kessler Myers & Postalakis, Incorporated, 300 West Wilson Bridge Road, Suite 100, Worthington, Ohio 43085
    Attorney for Plaintiff-Appellant

KAY E. CREMEANS, Atty. Reg. No. 0040706, and PAUL L. COX, Atty. Reg. No. 0007202, Fraternal Order of Police, Ohio Labor Council, Inc., 222 East Town Street, Columbus, Ohio 43215
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant, Wright State University ("WSU"), appeals from a decision of the Greene County Court of Common Pleas denying its application to vacate an arbitrator's decision that modified the discipline imposed by WSU upon the grievant, University Police Officer Marcus Wyatt. WSU challenges the court's finding that the arbitrator did not exceed his authority under the terms of the collective bargaining agreement between it and the police union. WSU further challenges the court's decision, claiming that reinstatement of the officer violates public policy.

{¶ 2} We conclude that the court did not err in finding that the arbitrator did not exceed his authority. Thus, we conclude that the court did not err in denying the application to vacate. We further conclude that the arbitrator's award does not violate public policy. Accordingly, the judgment of the common pleas court is affirmed.

## I. Facts and Procedural History

{¶ 3} WSU maintains a campus police department providing law enforcement services to its entire campus. The university employs campus police officers and police sergeants. Both groups of officers share the same Collective Bargaining Agreement ("CBA"). The Fraternal Order of Police/Ohio Labor Council ("FOP") represents both the officers and the sergeants.

{¶ 4} WSU hired Marcus Wyatt in 1997. He was promoted to sergeant in 2004. On December 6, 2014, Wyatt was scheduled to work during two events at a WSU venue. The first event was scheduled to begin at 3:00 p.m., with the second event set to start five hours later. When Wyatt arrived for a briefing prior to the first event, he was asked if he

had seen another officer, Stefan Kempf, who was also scheduled to work during both events. Wyatt indicated that he had not. He then called Kempf, who stated that he did not realize he was scheduled to work at the earlier event, and that he would report for duty as quickly as possible.

{¶ 5} Wyatt then called Lieutenant Jon Cross, and told him that Kempf was having vehicle problems, but that he was on his way to work. When Kempf arrived, he informed Cross that he did not have vehicle issues, but rather, had failed to read an email regarding his work schedule.

{¶ 6} Cross informed WSU Police Chief David Finnie about the incident. Wyatt was placed on administrative leave pending an investigation. Wyatt readily admitted that he had provided incorrect information to Cross regarding Kempf's late arrival to work. Finnie determined that Wyatt had violated WSU Police Department polices. These policies included requirements of honesty, truthfulness, reporting information properly, conduct becoming an officer, and satisfactory performance.

{¶ 7} A due process meeting was held in January 2015, following which Wyatt's employment was terminated. Wyatt and the FOP challenged his termination, and the matter was submitted to binding arbitration in accordance with the CBA. The parties submitted the following as their issue for determination by the arbitrator, "[d]id the University have just cause to terminate [Wyatt], and if not, what shall be the remedy?" A hearing was conducted in August 2015.

{¶ 8} Of relevance to this appeal, the CBA contains the following provisions that were relied upon by the parties and the arbitrator:

Article 3 – Management Rights

Unless expressly provided to the contrary by a specific provision of this Agreement, the University reserves and retains solely and exclusively all of its rights to manage the operation of the Police Department.

These rights shall include, but are not limited to, the right of the University to:

* * *

G. suspend, discipline, demote, or discharge for just cause * * *.

* * *

The University is not required to bargain over its management decisions or on subjects reserved to management except as provided by the provisions of ORC 4117. The Union may raise a legitimate complaint or file a grievance based on the Collective Bargaining Agreement.

Article 11 – Grievance and Arbitration Procedure

Section 5 – Arbitration Decision

* * *

Only disputes involving the interpretation or application of a provision of this Agreement shall be subject to arbitration. The arbitrator shall have no power to add or subtract from or modify any of the terms of this Agreement, nor shall the arbitrator substitute the arbitrator's discretion for that of the University or impose on either party a limitation or obligation not specifically required by the express language of this Agreement.

Article 17 – Corrective Action

Section 1 – Representation.   The University shall not discipline a non-probationary employee without just cause.   Employees shall be entitled to union representation at any level of the discipline process.   * * *

 Section 2 – Offenses.   Administering discipline is a management right. The University's decision to administer a certain level of discipline for a given offense shall be based on the facts and circumstances of each situation.   * * *

Examples (list not inclusive) of minor offenses best addressed by progressive discipline include poor performance, chronic absenteeism, disregard for instructions and/or work procedures, absence from an assigned work area without significant reason, extended break or meal periods that constitute an absence from the employee's assigned work area, late arrivals and/or early quits, minor insubordination, minor negligent damage to University equipment and/or property, and other similar types of offenses.

Examples (list not inclusive) of major offenses best addressed by accelerated discipline include cases of the use, sale, or possession of controlled substances on the job, arriving for work intoxicated or otherwise impaired by substance abuse or ingestion, theft, fraud, verbal and/or physical threat to another person, serious and/or chronic disregard for safety policies, instructions and/or work procedures, ethnic intimidation, major intentional damage to University equipment and/or property, sleeping

on the job, gross insubordination, or similar serious offenses.

Section 3 – Progressive Discipline. Discipline is cumulative. Any written form of discipline for any matter is considered in determining a greater level of discipline for any subsequent offenses. Discipline shall take into account the nature of the violation, the employee's work record, the employee's disciplinary record and his length of service with the department. * * *

* * *

Section 5 – Potential Levels of Discipline. The University will administer a system of discipline based on its assessment of the circumstances. Discipline may include: (1) verbal warning; (2) written warning; (3) suspension or demotion (reassignment); and (4) termination of employment; depending on the nature and seriousness of any infraction.

Section 6 – Arbitration. With respect to discipline under this Article, only suspensions, demotions and terminations of employment are arbitrable.

{¶ 9} Following the hearing, the arbitrator determined that WSU had just cause to discipline Wyatt for making an untruthful statement, but that it lacked just cause to terminate his employment. The arbitrator modified the discipline to a written warning and ordered that Wyatt be reinstated with full benefits.

{¶ 10} WSU filed an application to vacate the arbitrator's award with the Greene County Court of Common Pleas. The court found that the arbitrator's award was appropriate and denied the application to vacate. This appeal follows.

## II. A Court's Scope of Review of an Arbitrator's Award is Narrow.

{¶ 11} "Public policy favors arbitration." *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶ 14 (1st Dist.), quoting *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 742 N.E.2d 630 (2001). "Arbitration 'provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets.' " *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 21 (8th Dist.), *appeal not allowed*, 146 Ohio St.3d 1430, 2016-Ohio-4606, 52 N.E.3d 1204, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83, 488 N.E.2d 872 (1986).

{¶ 12} "Judicial review of arbitration awards is limited in order to encourage parties to resolve their disputes in arbitration." *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 16 (2d Dist.). The vacation of an arbitrator's award is permitted when the court finds that one of the conditions set forth in R.C. 2711.10 exists. *Id.* at ¶ 19. Pursuant to R.C. 2711.10(D), the court of common pleas may vacate an award if it finds that the arbitrator exceeded his or her powers. In order to determine whether an arbitrator has exceeded his or her authority, a court must look to whether the award "draws its essence" from the CBA. *Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶ 17 (1st Dist.). An award satisfies this requirement when there is a rational nexus between the CBA and the award. *Id.* at ¶ 18.

{¶ 13} Further, "[t]he comments to R.C. 2711.10, the statute governing judicial

vacation [of arbitration awards,] explain, [that] '[t]he arbitrators are the sole judges of the law and of the evidence[,] and no vacation of an award will be had because of their misconstruction of the facts or of the law." *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 18 (2d Dist.). "It is because arbitration is a creature of private contract that courts must ignore errors of fact or law." *Id.* "Critically then, in reviewing an arbitrator's award, the court must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is not." *Id.*

### III. The Arbitrator did not Exceed his Authority.

{¶ 14} The first Assignment of Error set forth by WSU states as follows:

OHIO LAW MANDATES THAT THE COURT VACATE AN ARBITRATION AWARD WHEN AN ARBITRATOR EXCEEDS THE AUTHORITY GRANTED TO HIM BY THE PARTIES UNDER THEIR COLLECTIVE BARGAINING AGREEMENT.

{¶ 15} WSU contends that the arbitrator's award must be vacated because the arbitrator exceeded his authority when he modified the discipline imposed by the university. In support, the university argues that once there is a finding of just cause to discipline, the CBA does not permit the arbitrator to substitute his judgment regarding the type of discipline imposed. The university also contends that the award must be vacated because the arbitrator limited the testimony of one witness, and refused to hear the testimony of a proposed expert.

{¶ 16} Pursuant to the CBA executed by the parties, WSU may discipline an

employee only upon a finding of "just cause." However, the agreement does not define "just cause." Without such a definition or limitation, the arbitrator must make two determinations in deciding whether an employer has disciplined and discharged an employee for just cause: "(1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances." *Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702 at ¶ 28. Thus, whether WSU had just cause to terminate Wyatt is a factual determination for the arbitrator to make in accordance with the terms of the CBA. *Id.*

{¶ 17} WSU contends that once the arbitrator determined there was just cause to find that Wyatt committed an offense, his inquiry ended. However, "[a]bsent language in a collective-bargaining agreement that restricts the arbitrator's power to review, if the arbitrator determines that there was just cause to discipline an employee, the arbitrator is not required to defer to the employer as to the type of discipline imposed." *Queen City Lodge No. 69, Fraternal Order of Police*, 2005-Ohio-6225, ¶ 21. We are cognizant that "[t]he fact that an arbitrator may review the appropriateness of the type of discipline imposed after determining that just cause exists for discipline does not mean, however, that the arbitrator can issue an arbitration award, modifying the discipline imposed, that conflicts with the express terms of the agreement. Where the collective bargaining agreement sets forth 'predetermined' levels of discipline or otherwise limits the authority of the arbitrator to review the discipline imposed, those limitations will be enforced." *Cleveland Police Patrolmen's Assn.* at ¶ 28.

{¶ 18} In this case, we find nothing in the CBA to prevent the arbitrator from reviewing the appropriateness of the discipline imposed. The CBA does not set forth a

predetermined level of discipline nor a matrix to follow when determining what discipline is required. The only restrictions imposed thereon are found in Article 11, Section 5, which prohibits an arbitrator from adding to, subtracting from or modifying the language of the CBA, and prevents the arbitrator from substituting his discretion for that of the university.

{¶ 19} WSU is correct that the CBA provides it with the exclusive right to manage discipline as set forth in Article 3 and Article 17, Section 2 of the CBA. It is also correct that the CBA states that the arbitrator cannot substitute his discretion for that of the university. However, these restrictions are necessarily modified by the fact that the CBA provides that discipline is subject to a determination of just cause, which as discussed above is, in this case, a factual determination for the arbitrator. Also, the CBA invites review of the level of discipline by providing that the level and type of discipline must be determined by the facts and circumstances of each situation, including the nature and seriousness of the offense, as well as consideration of the employee's work record, disciplinary record, and length of service. Arcticle 17, Sections 2, 3 and 5.

{¶ 20} WSU further argues that the modification of the discipline is not warranted by the terms of the CBA because Wyatt has been the subject of two prior disciplinary actions, one of which involved a suspension. WSU notes that its progressive discipline language requires that Wyatt not receive less discipline than meted out in his prior case. We note there is nothing in this record regarding any prior discipline other than the arbitrator's finding that he was subject to two minor disciplinary actions. Nor is there any competent evidence to indicate the level of discipline imposed. Even if the university is correct regarding the level of the prior discipline, any error is one of fact, and is not

reviewable.

{¶ 21} The CBA provides examples of minor offenses that are subject to progressive discipline. It also gives examples of major offenses subject to accelerated discipline. The offense at issue here is not expressly provided for in either category. There is no definition of accelerated discipline set forth in the CBA, and the definition of progressive discipline indicates that the facts and circumstances must be considered in determining discipline. Further, the level of discipline that can be imposed ranges from a verbal warning to termination, and under the terms of the CBA is dependent upon an assessment of the nature and seriousness of the infraction. Again, this is a factual determination for the arbitrator.

{¶ 22} WSU could have negotiated with the FOP for the inclusion in the CBA of a specific definition of just cause, a more limited review of its disciplinary actions, or for the absolute right to terminate an employee for any action involving dishonesty. It did not. Thus, in the absence of such an express provision, the arbitrator was entitled to determine the meaning of just cause as well as the penalty imposed for any infraction.

{¶ 23} We conclude that the arbitrator was entitled to review the level of discipline imposed in this case and to determine whether WSU had just cause for the level it chose. Since the arbitrator had that power, and since he utilized a level of discipline permitted by the CBA, we conclude his decision drew from the essence of the CBA. Thus, we conclude that the common pleas court did not err in finding that the arbitrator did not exceed his authority. This conclusion is consistent with the parties' statement regarding the issue for determination by the arbitrator, with this issue being, "[d]id the University have just cause to terminate [Wyatt], and if not, what shall be the remedy?"

{¶ 24} We next turn to the claim that the award must be vacated because the arbitrator did not permit WSU to present certain testimony. Specifically, WSU argues that the arbitrator refused to permit Kempf to testify as to the impact Wyatt's offense had on him, and refused to permit the testimony of an expert witness on the importance of police officer honesty and the effect of dishonesty as it pertains to the WSU police department's duty to disclose information pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). WSU cites *Bordonaro v. Merrill Lynch, Pierce, Fenner & Smith*, 156 Ohio App.3d 358, 2004-Ohio-741, 805 N.E.2d 1138, ¶ 7 (8th Dist.) for the proposition that an arbitration award should be vacated if an expert witness is not permitted to testify.

{¶ 25} Generally, the rules of evidence are more relaxed during arbitration hearings, and an arbitrator has wide discretion regarding evidence. *Bordonaro*, at ¶ 7. "However, if the exclusion or admission of evidence during an arbitration results in a gross procedural impropriety, vacating the award is then required." *Id.*

{¶ 26} We begin by noting that we find *Bordonaro* distinguishable from the facts at hand. *Bordonaro* involved an action similar to malpractice over a claim that the defendants had mishandled, and given negligent advice on, the plaintiff's securities accounts. *Id.* at ¶ 2. The arbitrators did not permit expert testimony on "industry customs and practices and the applicable standard of care in this case." *Id.* at ¶ 9. The court of appeals found that this error required vacation of the award because, absent testimony on the standard of care, there was no means for determining how the arbitrator reached its decision finding no liability. *Id.* at ¶ 27. While expert testimony would be necessary in a securities case, or for example in a medical malpractice case, here there

is no issue of an applicable standard of care.

{¶ 27} We cannot disagree with the arbitrator's decision not to allow Kempf's testimony on the issue of how Wyatt's actions personally affected Kempf. The arbitrator did not allow Kempf's testimony based upon the conclusion such testimony was not relevant. This was a legal determination solely within the arbitrator's purview. Such a determination cannot be the basis for vacation of an arbitration award. Further, such information was set forth as an exhibit to the post-brief that WSU was permitted to file.

{¶ 28} With regard to the expert's testimony regarding *Brady* issues raised by Wyatt's actons, we agree with the FOP that this constituted a matter of legal interpretation that was capable of being, and actually was, briefed by WSU. Further, it is not clear from our record whether the arbitrator completely rejected the expert's testimony, or whether he merely ordered that it be included in the post-trial brief. Indeed, the university dedicated numerous pages of the post-trial brief to a discussion of *Brady* as it relates to officer dishonesty.

{¶ 29} Based upon our review of the record, we cannot conclude that the arbitrator exceeded his authority. We further cannot conclude that the failure to permit Kempf and the expert to testify as to the effect of Wyatt's offense requires vacation of the award. Thus, we conclude that the common pleas court did not err by denying WSU's application to vacate the arbitration award.

{¶ 30} Accordingly, the first Assignment of Error is overruled.

### IV. Wyatt's Reinstatement Does Not Violate Public Policy.

{¶ 31} WSU's second Assignment of Error provides as follows:

THE AWARD MUST BE VACATED BECAUSE REINSTATEMENT OF THE GRIEVANT, A DISHONEST POLICE OFFICER WHO LIED TO HIS LIEUTENANT WHILE ON DUTY, WOULD VIOLATE WELL ESTABLISHED OHIO PUBLIC POLICY.

{¶ 32} WSU contends that the common pleas court was required to vacate the arbitration award because the reinstatement of Wyatt violates Ohio public policy which mandates that police officers are held to a higher standard of conduct than the general public, especially regarding issues of honesty.

{¶ 33} "The Ohio Supreme Court has recognized that, if an arbitrator's interpretation of a CBA violates public policy, the resulting award is unenforceable." *Fraternal Order of Police Lodge 8 v. Cleveland*, 8th Dist. Cuyahoga No. 102565, 2015-Ohio-4188, ¶ 25, *appeal not allowed*, 145 Ohio St.3d 1409, 2016-Ohio-899, 46 N.E.3d 703, citing *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 112, 742 N.E.2d 630 (2001), citing *W.R. Grace & Co. v. Local Union 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). The public policy "must be well[-]defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " *W.R. Grace & Co.* at 766.

{¶ 34} However, the issue is not whether the officer's conduct violated some public policy, but whether the arbitrator's reinstatement order did so. *Dayton v. AFSCME, Ohio Council 8*, 2d Dist. Montgomery No. 21092, 2005–Ohio–6392, ¶ 23, citing *Southwest Ohio Regional Transit Auth.* at 112–113, 742 N.E.2d 630; *see also Cleveland Police*

*Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 44 (8th Dist.). "A court may refuse to enforce an [arbitration] award when specific terms in the contract would violate public policy, but there is no broad power to set aside an arbitration award as against public policy." *AFSCME, Ohio Council 8*, at ¶ 23, quoting *Board of County Comm'rs v. L. Robert Kimball and Assoc.*, 860 F.2d 683, 686 (6th Cir. 1988).

{¶ 35} "Public policy, however, does not demand that the [university] have unbridled authority to terminate its employees for their misconduct. In its collective bargaining agreement with the FOP, the [university] bargained for the right to terminate or otherwise discipline police officers for just cause and to have an arbitrator review the propriety of its actions if other efforts to resolve disputes between the [university] and the FOP failed. There is nothing against public policy about enforcing this agreement." *City of Dayton v. Fraternal Order of Police*, 2d Dist. Montgomery No. 18158, 2000 WL 706829, * 5 (June 2, 2000).

{¶ 36} We do not question that officer honesty and integrity are vital. And we certainly do not condone Wyatt's actions. However, WSU does not cite, and we cannot find, any public policy that renders unlawful an arbitration award reinstating an officer in this type of situation. Accordingly, the second Assignment of Error is overruled.


## V. Conclusion

{¶ 37} Both of the Assignments of Error set forth by WSU are overruled, and the judgment of the common pleas court is Affirmed.

. . . . . . . . . . . .

DONOVAN, J., and WELBAUM, J., concur.


Copies mailed to:

Michael DeWine
David S. Kessler
Kay E. Cremeans
Paul L. Cox
Hon. Stephen Wolaver