[Cite as *Franklin Cty. Sheriff v. Teamsters Local No. 413*, 2018-Ohio-3684.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Franklin County Sheriff, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 17AP-717 |
| | | (C.P.C. No. 16CV5805) |
| Teamsters Local No. 413, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 13, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Timothy A. Lecklider*, for appellant. **Argued:** *Timothy A. Lecklider.*

**On brief:** *Cook & Logothetis, LLC,* and *Clement L. Tsao*, for appellee. **Argued:** *Clement L. Tsao.*

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} The office of the Franklin County Sheriff is appealing from the results of arbitration proceedings. For the reasons that follow, we affirm the judgment of the court of common pleas.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The Franklin County Sheriff's Office ("FCSO") and Teamsters Local No. 413 ("the Union") are parties to a collective bargaining agreement ("CBA") under R.C. Chapter 4117 that covers civilian employees. In January 2014, the FCSO created a new non-bargaining classification called Corrections Services Coordinator ("CSC"). This new classification was created to hire civilians to perform jailhouse duties formerly performed

by deputy sheriffs. The CSCs were tasked with directing and coordinating the laundry operation and supervising inmates assigned to laundry activities, monitoring recreation and visitation programs and activities, sorting and searching mail, and answering questions from the public, other agencies, and staff.

{¶ 3} Because the job necessitated close interaction with inmates, the CSCs were required to serve a one-year probationary period, the same as the sheriff's deputies who previously performed those duties. The four grievants involved in this case, Melissa Carr, Diana Gilliam, Michelle Strickler-Fisk, and Connie Tafoya, all signed forms prepared by the FCSO that acknowledged they were subject to a one-year probationary period. The grievants were hired into the newly created classification on June 27, 2014. During the entire course of their employment, the grievants received all the benefits provided to exempt, non-bargaining unit employees. They did not pay union dues or have a fair share fee deducted at any time during their employment.

{¶ 4} In August or September 2014, the grievants left their assigned posts and met in an area of the jail's laundry facility. Grievant Tafoya put on an extra large pair of men's underwear over her uniform and posed with her hand grabbing her crotch and her tongue sticking out, while another person in the room took photographs with a cell phone. Later that day, grievant Gilliam texted the photograph of Tafoya to Carr, Strickler-Fisk, and Tafoya. Carr, Strickler-Fisk, and Tafoya deleted the photograph from their phones and did not discuss or hear about the incident until June 2015. None of the grievants reported the incident to a supervisor.

{¶ 5} In the meantime, the CBA between the sheriff and the Union expired on December 31, 2014 with no successor agreement in place. The following month, in January 2015, the Union filed an opt-in request for recognition with the State Employment Relations Board ("SERB") seeking to add the CSC classification to its existing bargaining unit. SERB certified the Union's opt-in request on March 12, 2015.

{¶ 6} In June 2015, grievant Gilliam again texted a photograph of Tafoya wearing the underwear to Strickler-Fisk and Carr. On June 5, 2015, Gilliam texted the photo to her supervisor, Brian Wolfe, who forwarded the photo to his superiors, completed an incident report, and submitted it to his chief.

{¶ 7}   The incident was investigated by Lieutenant Matthew Stice who concluded the grievants' action constituted a violation of several work rules.  Lt. Stice's report moved up the chain of command, and Carr, Gilliam, and Strickler-Fisk were notified by Sheriff Zach Scott that their employment was terminated effective June 18, 2015.  Tafoya received a notice from Sheriff Scott that her employment was terminated effective June 22, 2015.

{¶ 8}   At the time the grievants were terminated, the Union was negotiating a successor agreement with FCSO.  The parties entered into a Contract Extension Agreement ("CEA") on July 8, 2015, that caused all the articles of the 2013-2014 CBA to continue during the bargaining period.

{¶ 9}   The Union filed a grievance on behalf of the grievants on July 1, 2015.  The Union took the position that instead of the one-year probation period, a 120-day probation period applied to the grievants by virtue of the parties' execution of the CEA.  Furthermore, the Union took the position that the FCSO lacked just cause to terminate the grievants.  FCSO took the position that the grievants were still under the one-year probation period and therefore their termination was not subject to arbitration.  In addition, the FCSO argued there was just cause for the terminations.

{¶ 10}  The arbitration was bifurcated, and a hearing was held on November 19, 2015 to determine the issue of arbitrability.  Under the CBA which applied to employees generally, the probationary period was 120 days.  FCSO argued unsuccessfully before the arbitrator that the CEA was not executed until after the grievants were fired, so the documents they executed when hired took precedence.

{¶ 11}  Relying on the CEA, on December 22, 2015, the arbitrator ruled that the matter was arbitrable, and the FCSO had the burden of proving that it had just cause to terminate the grievants.  The arbitrator found that by virtue of the parties' actions in continuing to abide by the terms of the 2013-2014 CBA and the retroactive operation of the CEA, the provisions of the 2013-2014 CBA were in effect at the time of the terminations in June 2015.  In addition, the arbitrator found that the grievants had raised an issue of contract interpretation in regard to whether the 120-day probation period under Article 16 of the CBA applied to the grievants, and therefore the grievance was substantively arbitrable.

{¶ 12} A second arbitration hearing on the merits of the grievance was held on January 22, 2016.  In his March 22, 2016 opinion and award, the arbitrator found that the FCSO lacked just cause to terminate the grievants.  He set aside the terminations of Strickler-Fisk and Carr for lack of a factual foundation and reinstated them to their prior positions.  He set aside the terminations of Tafoya and Gilliam as grossly excessive and reinstated them to their prior positions less a five-day suspension for each of them.

{¶ 13} The FCSO filed a motion to vacate the two awards, and the Union filed a motion to confirm the awards.  On September 11, 2017, the court of common pleas granted the Union's motion to confirm the awards and denied the motion to vacate.

{¶ 14} This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶ 15} FCSO has assigned two errors for our consideration:

> [I.] The Common Pleas Court erred in finding that the grievance was arbitrable.
>
> [II.] The Common Pleas Court erred in confirming the award, failing to vacate the award, and failing to find the arbitrator's award was arbitrary and capricious.

## III. DISCUSSION

### A. Standard of Review

{¶ 16} The Supreme Court of Ohio recently settled a conflict among the state's appellate courts as to what standard of review applies in reviewing a trial court decision to confirm or vacate an arbitration award.  In *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, the court held that:

> When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo.

*Id.* at syllabus.  The question of whether an arbitrator has exceeded his authority is a question of law.  *Id.* at ¶ 25, quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir.2000).

**B. Whether the grievance was arbitrable**

{¶ 17} Public policy in Ohio favors the resolution of labor disputes through arbitration. *Findlay Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131 (1990); *Reynoldsburg City Sch. Dist. Bd. of Edn. v. Licking Hts. Local Sch. Dist. Bd. of Edn.*, 10th Dist. No. 11AP-173, 2011-Ohio-5063, ¶ 19; *Cincinnati v. Queen City Lodge No. 69*, 164 Ohio App.3d 408, 2005-Ohio-6225, ¶ 14 (1st Dist.). Judicial review of arbitration awards is limited in order to encourage the resolution of disputes in arbitration. *Wright State Univ. v. FOP*, 2d Dist. No. 2016-CA-35, 2017-Ohio-854, ¶ 12. Nevertheless, an arbitrator's power is not unlimited, and a party may file a motion in the court of common pleas to vacate, modify or correct an award. R.C. 2711.13.

{¶ 18} In reviewing a motion to vacate an arbitration award, courts are bound by R.C. 2711.10, which provides, in pertinent part:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
>
> (A) The award was procured by corruption, fraud, or undue means.
>
> (B) Evident partiality or corruption on the part of the arbitrators, or any of them.
>
> (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶ 19} FCSO has argued that the awards should be vacated under R.C. 2711.10(D) because the arbitrator exceeded his powers in finding the grievance to be arbitrable, and under R.C. 2711.10(C) because the arbitrator refused to hear certain testimony and admit certain evidence.

{¶ 20} In determining whether an arbitrator exceeded his or her authority, a court must look to whether the award draws its essence from the CBA. *Cincinnati* at ¶ 17, citing *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 406 (1992). An award satisfies this requirement when there is a rational nexus between the CBA and the award. *Cincinnati* at ¶ 18. "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Bd. of Edn. of Findlay City School Dist.* at paragraph two of the syllabus.

{¶ 21} In this case, the arbitrator's first task was to determine whether he had the authority under the CBA to hear and decide the grievance brought by the Union. If the grievants were terminated within their probationary period as FCSO maintained, the grievance was not arbitrable.

{¶ 22} The arbitrator found that there was no applicable and binding authority directly on point with respect to the bargaining obligation of the parties where the parties are actively engaged in bargaining for a new contract. The arbitrator looked to the plain language of the CEA and found that the intent of the CEA was to cause all the articles of the 2013-2014 CBA to continue during the bargaining period going back to the time the original CBA was set to expire and continuing indefinitely. The arbitrator then applied the 120-day probation period to the grievants and found that because the grievants were terminated outside the 120-day period, the grievance was arbitrable.

{¶ 23} In its first assignment of error, FCSO contends that the arbitrator applied the wrong legal analysis in determining whether the provisions of the CBA should have applied to the grievants since they were newly added to the bargaining unit after the CBA had expired and before the successor CBA was put into place. Accordingly, FCSO sought to vacate the award pursuant to R.C. 2711.10(D) on the grounds that the arbitrator exceeded his authority in relying on the CEA and finding that a 120-day probationary period applied.

{¶ 24} Essentially, FCSO argues that it was not required to apply the terms of the CBA to the newly added CSCs, but was only required to maintain the status quo with respect to those employees until the parties could negotiate the terms of their employment. In support of this argument, FCSO cites to the case of *Internatl. Union of Operating*

*Engineers, Local 399 v. Illinois Educational Labor Relations Bd.*, 2013 IL App. No. 1-12-2432-U (Oct. 30, 2013). In that case, the union contended that the employer had improperly refused to apply the terms and conditions of a preexisting CBA to six employees who had successfully sought a job reclassification that removed them from the bargaining unit, but who were later added back in. The Illinois court of appeals held that until the parties engaged in collective bargaining and reached an agreement, the employer was required to maintain the status quo and was not permitted to apply the terms and conditions of the existing CBA to those employees.

{¶ 25} The Union argues that the CEA should be applied retroactively. The Union cites to *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 113 Ohio St.3d 480, 484, 2007-Ohio-2452, citing *Young v. Washington Local School Dist. Bd. of Edn.*, 85 Ohio App.3d 37, 41 (4th Dist.1993), for the proposition that where both parties to a CBA continue to operate after its expiration as if there were a contract, and neither party breaches or indicates its intention to no longer be bound, then the status quo continues. The Union contends that this is why the arbitrator was able to find that the terms of the 2013-2014 CBA were in effect at the time of the grievants' terminations in June 2015.

{¶ 26} The FCSO operated throughout the grievants' employment as if they were exempt employees even after SERB certified the Union's opt-in request on March 12, 2015. The arbitrator, however, determined that when the parties bargained and executed the CEA, it had a retroactive effect and the rights of the 2013-2014 CBA and CEA applied to the grievants. Those rights included the recognition clause which had been expanded by operation of law when SERB certified the Union's opt-in request in March 2015. Those rights also included Article 16 regarding the 120-day probationary period. The arbitrator reasoned that if the FCSO wanted to carve out the CSCs' probationary period from the CEA, they were free to do so, but they elected not to.

{¶ 27} Because the grievance raised a dispute related to the application of the provisions of the CBA concerning which probationary period applied, and because the grievance raised the issue of whether FCSO had just cause to terminate the grievants, the arbitrator concluded the grievance was a matter of contract interpretation and therefore substantively arbitrable.

{¶ 28} Here, we cannot find that the arbitrator exceeded his powers in interpreting the CBA and the CEA in the way that he did. *Engineers Local 399*, is not binding authority on this court. We find it to be distinguishable from the present case because the parties bargained for and executed a CEA that the arbitrator found applied retroactively to the CSCs and resulted in the CSCs being covered by the 2013-2014 CBA that provided for a 120-day probationary period.

{¶ 29} The arbitrator stated:

> While it may very well be that the Employer [FCSO] relied on the absence of an extension agreement in terminating the 4 Grievants at a time when it appeared no CBA was in effect, this perception should have been adjusted when it became apparent (on July 8, 2015) that the parties mutually intended the 2013-14 CBA to be effective continuingly from the date it was "originally set to expire" until "indefinitely" unless terminated by 10-day notice. * * * It bears noting here that it is not unusual for bargaining parties to make agreements that have retroactive effect. That is precisely what the chief bargainers did, in executing the Extension Agreement.

(Dec. 22, 2015 Arbitrator's Interim Opinion and Award at 7-8.)

{¶ 30} Having found a lack of binding authority from the courts, the arbitrator looked to the language of the CBA and the CEA as well as general principles that apply when parties continue to operate under an expired CBA. Based on the plain language of the CEA, the arbitrator determined that the parties intended to include Article 16 concerning the length of the probationary period as part of the terms of employment.

{¶ 31} The arbitrator stated:

> The parties chose to include Article 16.1 regarding the Corrections Service Coordinators' probationary period within the general applicability of the terms of the Extension Agreement. They expressed their bargain in sweeping and unequivocal terms. The old contract had continuing and complete vitality, including the recognition clause (which had been expanded by operation of law under SERB's order on March 15, 2015) and including Article 16.1 regarding probationary period. They could have said the old contract "is hereby mutually extended indefinitely, except for Article 16.1 as applied to Corrections Services Coordinators." They did not bargain such an agreement.

*Id.* at 9-10.

{¶ 32} We find nothing unlawful, arbitrary, or capricious in the arbitrator's interpretation of the CBA and the CEA, and the arbitrator's decision that the matter was arbitrable drew its essence from the CBA and bore a rational nexus to the CBA.

### C. Should the award have been vacated for precluding certain evidence?

{¶ 33} The FCSO also claims that the award must be vacated pursuant to R.C. 2711.10(C) because the arbitrator did not permit FCSO to present certain testimony and documents concerning the ongoing negotiations for a new CBA.  FCSO asserts that the arbitrator erred by excluding more detailed testimony by FCSO's human resources director regarding the negotiations for the successor CBA.  Specifically, FCSO argues the human resources director should have been permitted to testify about the negotiations concerning the applicable probationary period for the CSCs.  The arbitrator also excluded two pieces of documentary evidence, the Article 16 proposals concerning the probationary period, and the fact finding report.  FCSO argues this evidence was relevant to show that the CSCs were subject to a one-year probationary period, and was relevant to a determination of the ultimate issue of arbitrability.

{¶ 34} The arbitrator excluded the evidence because he believed the fact finding proceedings were not relevant to the grievance and instead related to the successor CBA, not the CEA.  This was a legal determination within the arbitrator's purview.  *See Wright State Univ. v. FOP*, 2d Dist. No. 2016-CA-35, 2017-Ohio-854, ¶ 27 (the arbitrator did not allow testimony based on the conclusion that the testimony was not relevant).

{¶ 35} The arbitrator did not exceed his authority or was not guilty of misconduct in refusing to hear evidence that he found to be irrelevant to the controversy before him.

### D. Tolling

{¶ 36} Continuing its argument with respect to the first assignment of error, FCSO argues the common pleas court erred in failing to recognize the concept of tolling as it relates to when the sheriff had notice of the conduct leading to the grievants' terminations. FCSO argues that the incident occurred during the 120-day probationary period, but the sheriff did not become aware of it until June 2015, and as soon as he was aware of it, he

investigated promptly. Therefore, because the grievants' actions were concealed from the sheriff for many months, FCSO argues the arbitrator should have applied the doctrine of equitable tolling and applied the standard that applied when the incident occurred.

{¶ 37} The arbitrator found that FCSO had a work rule requiring the reporting of any misconduct when an employee has knowledge of it, but the grievants were not charged with violation of that rule. Therefore, the failure to charge waives application of the rule because basic fairness demands that a person charged with violation of a rule be given notice and an opportunity to defend against application of the rule. In addition, the arbitrator noted there was no showing of active concerted concealment that would warrant tolling or postponing the date on which the grievants' probationary period ended. To adopt FCSO's line of reasoning, it would mean that an employee could potentially never benefit from completing a probationary period if prior alleged misconduct is discovered months or years after the probationary period expires. The argument is contrary to the intent and purpose of the CBA.

{¶ 38} Therefore, it was reasonable not to toll the probationary period, and the decision not to toll the probationary period cannot serve as a basis for setting aside the arbitration award.

{¶ 39} In sum, as a matter of law, the arbitrator did not exceed his authority in determining the grievance was arbitrable. We find that the issues were in fact subject to arbitration and affirm the finding of the arbitrator and the court of common pleas on that issue. The first assignment of error is overruled.

### E. Did the arbitrator substitute his judgment for that of the sheriff?

{¶ 40} In the second assignment of error, FCSO argues that the arbitrator's decision to characterize the grievants' conduct as mere horseplay and reduce the discipline, minimizes the seriousness of the offenses, and inappropriately substitutes the arbitrator's judgment for that of the sheriff.

{¶ 41} In applying the test of just cause, an arbitrator can set aside or modify an employer's penalty where the evidence shows the misconduct alleged has not been proven or the employer imposed excessive discipline for the offenses charged. *Piqua v. FOP, Ohio Labor Council*, 185 Ohio App.3d 496, 2009-Ohio-6591, ¶ 29 (2d Dist.). The contractual

right of the employer to discharge or discipline an employee for just cause requires the arbitrator to make two determinations: whether a cause for discipline exists and whether the amount of discipline was proper under the circumstances. *Bd. of Trustees of Miami Twp. v. FOP, Ohio Labor Council,* 81 Ohio St.3d 269, 271-72 (1998).

{¶ 42} Article 12.1 of the CBA states, in pertinent part:

> The purpose of discipline is to correct or modify the behavior of an employee, foster compliance with regulations, enhance operations and provide for the safety of the public, members, and staff. No bargaining unit member shall be reduced in pay or position, suspended, removed or reprimanded except for just cause.

(CBA effective June 4, 2013 – Dec. 31, 2014 at 18.)

{¶ 43} Based on the evidence received by the arbitrator, he made certain findings with respect to each of the grievants. He found no factual foundation to support the charge against grievant Michelle Strickler-Fisk as she was not present during the picture taking incident. He found that grievant Melissa Carr did not dress up, take pictures, laugh during the clowning by grievant Tafoya, or participate in any way other than to be in the laundry room while the events took place. Therefore, the determination that there was no adequate factual basis for the discharge of Strickler-Fisk and Carr was supported by the evidence at the hearing.

{¶ 44} With respect to grievant Tafoya, he found a single isolated instance of violation of unbecoming conduct. And with respect to grievant Gilliam, he found her encouraging and aiding and abetting the horseplay by snapping photos. The arbitrator found the conduct took place in the isolation of the laundry room where there were no other employees, no immediate task to be performed, no interaction with inmates, no witnesses other than the grievants, no impact on the employer's legitimate interest to maintain discipline (beyond the conduct of Tafoya and Gilliam), no impact on the efficiency of the operation, no harm or threat of harm to anyone, and no loss of employer property. The arbitrator found the punishment did not fit the crime, so to speak, and was disproportionate to the gravity of the offense based on Article 12.1 of the CBA and the just cause principle that discipline should be corrective rather than punitive.

{¶ 45} Accordingly, he found the goal of corrective discipline could be achieved by a five-day disciplinary suspension for grievants Tafoya and Gilliam.

{¶ 46} There was no overreach here.  The arbitrator based his decision on the information properly before him.  The arbitrator did not exceed the appropriate scope of arbitration. The arbitrator's decision with respect to the discipline imposed draws its essence from the agreement and is not unlawful, arbitrary, or capricious.

{¶ 47} The common pleas court was clearly correct to accept the arbitrator's decision.

{¶ 48} The second assignment of error is overruled.

## IV. CONCLUSION

{¶ 49} Both assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas adopting the arbitrator's decision is affirmed.

*Judgment affirmed.*

BROWN, P.J., and LUPER SCHUSTER, J.,
concur in judgment only.