[Cite as *Columbus v. Internatl. Assn. of Firefighters, Local 67*, 2020-Ohio-356.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-486 |
| v. | : | (C.P.C. No. 17CV-5569) |
| International Association of Firefighters, | : | (REGULAR CALENDAR) |
| Local 67, | | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Zach M. Klein*, City Attorney, and *Jennifer L. Shea*, for appellant. **Argued:** *Jennifer L. Shea.*

**On brief:** *Thompson Hine LLP*, *Thomas Wyatt Palmer*, and *William C. Moul*, for appellee. **Argued:** *Thomas Wyatt Palmer.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, City of Columbus (the "City"), appeals from a decision of the Franklin County Court of Common Pleas declining to vacate an arbitrator's decision in favor of defendant-appellee, International Association of Firefighters, Local 67 ("Local 67" or "union local"). Because the arbitrator's decision is reasonably derived from and does not conflict with the collective bargaining agreement between the parties, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 19, 2015, a battalion chief representing the Office of the Fire Chief for the City of Columbus Division of Fire ("Division"), sent an e-mail to the President of Local 67. (Ex. JT2 at 4, exhibit to July 27, 2017 Local 67 Application to Confirm.) The e-mail indicated that the "directors office decided" to civilianize certain special assignments

then filled by uniformed firefighters.  *Id.*  Attached to the e-mail was a document listing 17 positions that the City intended to civilianize: "RMS," "Fitness Coordinator," "Special Events Coord," "EMS Supply Tech," "ES-1 Liaison," "Training Video," "FAO Radio Specialist," "Public CPR Trainer," "R&D Specialist," "R&D Specialist," "R&D Specification," "I.T. Coordinator," "Apprenticeship Asst.," "FAO Trainer," "Community Relations," "In Service Training," and "ES-1 Office Aid."  *Id.* at 8.  Of these, eight were described in greater detail:

> **RMS Special Assignment Firefighter:** * * * helps out with the Records Management of Fire Incident Reporting.  * * *
>
> **Fitness Coordinator Firefighter:** Currently a vacant position being held from bid on the transfer list. * * * The Division would like to civilianize this position into an industrial hygienist * * * [who] would coordinate both the physicals being completed through Mt Carmel Health and work on issues regarding mold, bed bugs, and Ebola procedures, etc.
>
> * * *
>
> **Special Events Coordinator:** The current position prepares special duty medics for special events. The position stocks, cleans, and provides station level maintenance on the vehicles. * * *
>
> **EMS Supply Technician:** The current position handles all EMS supplies for the Division of Fire. The position orders, receives stocks and maintains secure storage of narcotic medications. * * *
>
> **ES-1 Liaison position:** This position coordinates annual and monthly vacations for the emergency services personnel. * * *
>
> **Training Video Firefighter:** This position helps out shooting videos for training and other fire department functions. * * *
>
> **Public CPR Trainer:** This position currently coordinates and teaches public citizens CPR and the Red Cross Life Saver classes through the Columbus Division of Fire. * * *
>
> **800 MHz Radio Coordinator:** [Currently coordinates t]he 800 MHz [radio] * * * [but will] eventually include the coordination of radios for both Police and Fire.

(Emphasis sic.) *Id.* at 6-7.

{¶ 3}   The following day, Local 67 grieved the proposed action as a potential violation of Section 7.2 of the collective bargaining agreement ("CBA") between the City and the union local.  *Id.* at 1-3.

{¶ 4}   Ultimately, the matter was presented to an arbitrator, who issued a decision on March 23, 2017 finding in favor of Local 67.  (Mar. 23, 2017 Arbitrator Decision, Ex. 3 to June 22, 2017 Compl.)  According to the arbitrator's decision,[1] there was essentially no dispute among the parties about the facts underlying the grievance.  *Id.* at 6.  Several years before the dispute arose, Local 67 and the City had cooperated in identifying some departmental positions that could be filled by civilians in order to return uniformed firefighters then occupying those positions to street and firehouse positions.  *Id.* at 5-6.  In 2015, the City had "civilianized" outside of the terms of the CBA 6 of the 17 targeted special assignment positions.  *Id.* at 6.  These were identified in the hearing, but it is not apparent from the appellate record which 6 of the 17 listed positions were civilianized—that is—were being staffed with civilians in lieu of then current bargaining unit uniformed personnel.  *Id.*

{¶ 5}   The arbitrator reasoned that, notwithstanding previous indications that there was some consensus between City and union local that it might be appropriate to civilianize some positions, the relevant event triggering this grievance was the notice from the City on October 19, 2015 to the effect that it intended to *unilaterally* civilianize certain positions.  *Id.* at 11-13.  As the grievance was filed the following day, the arbitrator determined that it was timely.  *Id.* at 13.  The arbitrator then considered the merits of Local 67's grievance.

{¶ 6}   The arbitrator found that language in Section 7.2 of the CBA, wherein the City "agree[d] to not civilianize any fire prevention, emergency medical services, or fire suppression services," read in context of the entire CBA, was broader than its exact terms might suggest.  *Id.* at 14. (CBA at 10, Ex. 1 to June 22, 2017 Compl.)  The arbitrator noted that the CBA otherwise deals exclusively with uniformed positions and that no right to civilianize is conferred on the City or Division, nor are civilian employees even mentioned in the agreement.  (Mar. 23, 2017 Arbitrator Decision at 14.)  In that context, the arbitrator concluded that the agreement in Section 7.2 was effectively intended as a promise not to civilianize any Division of Fire positions and that the terms "fire prevention, emergency

---

[1] No transcripts of the hearing held by the arbitrator were filed in the trial court or with this Court.  Thus, we relate the facts as recounted by the arbitrator.

medical services, or fire suppression services" were, in essence, to be read as broad, "comprehensive" descriptors rather than limitations. *Id.*

{¶ 7} The arbitrator also relied on the long history of uniformed firefighters filling the targeted positions and the fact that the positions had always been part of the overall mission of the Division of Fire. *Id.* at 15. However, the historical detail that the arbitrator found to be "the most persuasive confirmation of the Union's position [wa]s that the [City] sought the approval of the Union" local when it previously sought to civilianize. *Id.* According to the arbitrator, the City previously sought the consent of Local 67 to study whether jobs could be civilianized and firefighters returned to the street in order to better protect inadequately served neighborhoods. *Id.* at 15. Though the City was arguing in this grievance process that it need not have sought Union permission to civilianize, in prior years (2006-07) it apparently held a different view and recognized that it could not unilaterally civilianize Division of Fire positions. *Id.* at 16.

{¶ 8} Based on this reasoning, the arbitrator in his decision concluded that the City must seek the consent and participation of the union local before civilianizing any of the other positions in the civilianization list. *Id.*

{¶ 9} Through a series of complaints filed on June 22, 2017, an application to vacate the arbitrator's decision four days later and at least one amendment, the City sought to vacate the arbitrator's decision. (June 22, 2017 Compl.; June 26, 2017 Application to Vacate; July 13, 2017 Am. Application to Vacate.) Local 67 responded in opposition and moved to confirm the arbitrator's decision on July 27, 2017. (July 27, 2017 Application to Confirm.) The parties fully briefed the issues, and on May 1, 2018, the trial court issued a decision in which it acknowledged the filings of the parties, reviewed the history of the case, and quoted the relevant standard of review. (May 1, 2018 Decision at 1-5.) Noting what it referred to as the "highly deferential" standard accorded to review of arbitration, it stated that the issue presented was "whether the arbitrator's award was rationally derived from the applicable terms of the collective bargaining agreement." *Id.* at 4-5. On this question it concluded:

> After reviewing the arguments and evidence submitted by the parties, the court finds that a rational nexus exists between the Agreement and the arbitrator's Award, and that there is not sufficient evidence from which this court can conclude that the arbitrator's interpretation of the agreement is not consistent

with the Agreement. Nor does the court find that the Award is unlawful, arbitrary or capricious. Therefore, the court's inquiry pursuant to R.C. § 2711.10 is at an end, and the court finds the City's position not well taken.

*Id.* at 5.

**{¶ 10}** The City now appeals.

## II. ASSIGNMENT OF ERROR

**{¶ 11}** The City presents a single assignment of error for review:

The Trial Court erred in denying Appellant's Application and Motion to Vacate the Arbitration Award and not addressing the grounds upon which Appellant sought to vacate the Award.

## III. DISCUSSION

**{¶ 12}** This Court has previously stated:

Public policy in Ohio favors the resolution of labor disputes through arbitration. *Findlay Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131, 551 N.E.2d 186 (1990); *Reynoldsburg City Sch. Dist. Bd. of Edn. v. Licking Hts. Local Sch. Dist. Bd. of Edn.*, 10th Dist. No. 11AP-173, 2011-Ohio-5063, ¶ 19; *Cincinnati v. Queen City Lodge No. 69*, 164 Ohio App.3d 408, 2005-Ohio-6225, ¶ 14, 842 N.E.2d 588 (1st Dist.). Judicial review of arbitration awards is limited in order to encourage the resolution of disputes in arbitration. *Wright State Univ. v. FOP*, 2d Dist. No. 2016-CA-35, 2017-Ohio-854, ¶ 12.

*Franklin Cty. Sheriff v. Teamsters Local No. 413*, 10th Dist. No. 17AP-717, 2018-Ohio-3684, ¶ 17. Notwithstanding such policies, a court of common pleas "shall" vacate an arbitrator's award upon the application of any party to the arbitration if:

(A) The award was procured by corruption, fraud, or undue means.

(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

R.C. 2711.10.

{¶ 13} In this case, no corruption, fraud, partiality, or other misconduct or misbehavior were alleged. Thus, the question before the trial court was whether the arbitrator exceeded his authority as contemplated in division (D) of R.C. 2711.10. This Court has also thoroughly examined this question:

> An arbitrator does not exceed her authority so long as the award "draws its essence" from the underlying contract. *Thermal Ventures II, L.P. v. Thermal Ventures, Inc.*, Cuyahoga App. No. 85816, 2005 Ohio 3389, at P13, citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assoc.*, 49 Ohio St.3d 129, 132, 551 N.E.2d 186. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation and Developmental Disabilities v. Mahoning Cty. TMR Educ. Assn.*, [22 Ohio St. 3d 80 (1986),] paragraph one of syllabus. Stated differently, "an arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL-CIO* (1991), 59 Ohio St. 3d 177, 572 N.E.2d 71, syllabus.

*Fraternal Order of Police Capital City Lodge No. 9 v. Columbus*, 10th Dist. No. 04AP-1023, 2006-Ohio-1520, ¶ 9 ("*FOP*"); *see also, e.g., Teamsters Local No. 413* at ¶ 20.

{¶ 14} When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, syllabus (following *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)).

{¶ 15} The City argues that the arbitrator's decision conflicts with the CBA in that it ordered no further civilianization without the consent of the union local. (City Brief at 13-

14.)  The City also urges us to find that the arbitrator's decision was without rational support from the CBA because the arbitrator found that Local 67's consent was required for the civilianization of <u>any</u> bargaining unit employee position, not strictly limited by the descriptors, "fire prevention, emergency medical services, or fire suppression services." (City Brief at 11-13.)  Local 67 argues the fact that its consent is required for civilianization is simply the logical consequence of the CBA's broad prohibition on civilianization.  (Local 67 Brief at 20-24.)

{¶ 16}  Leaving aside for a moment the question of how broad the prohibition on civilianization is, we agree with Local 67 that its consent is required to civilianize protected positions.   The CBA, at Section 7.2, expressly prohibits "civilianiz[ation] [of] any fire prevention, emergency medical services, or fire suppression services."  (CBA at 10.)  That the City must reach a new agreement with Local 67 if it wants to civilianize protected positions is a completely "rational[] deriv[ation] from the terms of the agreement." *FOP*, 2006-Ohio-1520, ¶ 9.

{¶ 17}  Whether the scope of the CBA's prohibition on civilianization extends beyond positions specifically named in the CBA, "fire prevention, emergency medical services, or fire suppression" and reaches positions that support those functions is not before us on appellate review.  (CBA at 10.)  We review the trial court's decision de novo and like the trial court must determine whether the arbitrator's resolution of that question "drew its essence" from the CBA.  In other words, we like the trial court must decide whether the arbitrator's decision was "without rational support or c[ould not] be rationally derived from the terms of the agreement." *FOP* at ¶ 9.

{¶ 18}  The CBA nowhere asserts, affirms, or implies a broad right of the City to civilianize bargaining unit positions.  The CBA provides no general right to civilianize the City.  Nor do the terms of the CBA, taken as a whole, suggest that Section 7.2 should be read as a narrow exception to a general right to civilianize.  Rather the CBA contains, and the arbitrator found,  a broad prohibition on civilianizing positions within the Division.  It also bears note that "emergency dispatching duties performed by the bargaining unit" are listed within those services that the City may not contract-out but are <u>not</u> listed within those service positions that cannot be civilianized.  (CBA at 10.)  One reasonable interpretation of this difference is that dispatching services are contemplated as a limited exception to an

otherwise broad civilianization ban. That is, the CBA's language could be read (as the arbitrator read it) as a broad prohibition of civilianization with respect to positions related to all the major tasks accomplished by the bargaining unit employees (fire prevention/suppression and EMS) and excepting from it only dispatching.

{¶ 19} We cannot say that the arbitrator's interpretation in this case is "without rational support" in the CBA. *FOP* at ¶ 9. Nor can we fault the arbitrator's consideration of the parties' prior conduct. The fact that the City previously sought Local 67's cooperation in civilianizing positions could have been interpreted simply as a wise action to foster good relations. But it could also reasonably have been interpreted (as the arbitrator interpreted it) to mean that the City understood that it was prohibited from civilianizing division positions held by bargaining unit members and that Local 67's cooperation or support was therefore necessary.

{¶ 20} The City's assignment of error is overruled.

## IV.  CONCLUSION

{¶ 21} The arbitrator's decision is drawn from the CBA and there is rational support for it. While it is not the only possible view of the CBA, it is not an unreasonable or irrational one, and it does not conflict with any part of the CBA. We therefore affirm the Franklin County Court of Common Pleas' decision to confirm the arbitrator's judgment.

*Judgment affirmed.*

KLATT and McGRATH, JJ., concur.

McGRATH, J., retired, formerly of the Tenth Appellate
District, assigned to active duty under authority of Ohio
Constitution, Article IV, Section 6(C).

————————————